## Briggs *versus* Garrett.

1. If a respectable citizen honestly believes and states, that a candidate for a public office is guilty of official misconduct or is a person of evil repute, in the sense that it affects his fitness for the office which he seeks, such statement is privileged and may be repeated by another in a meeting assembled to inquire into the merits of the candidates, though it be absolutely false, and upon inquiry its falsity might have been ascertained, without being liable in an action for libel; for the voter has the right to canvass and discuss the qualifications of the candidates who seek his suffrage openly and freely.

2. A communication to be privileged must ·be· made upon a proper occasion, from a proper motive and must be based upon reasonable or probable cause. When so made in good faith the law does not imply malice from the communication itself as in the ordinary case of libel. Actual malice must be proved before there can be a recovery, and in the absence of such proof a nonsuit should be· granted.

3. Whether a communication be privileged or not, is a question for the court, not for the jury.

January 6th, 1886. Before Mercur, C. J., Gordon, Paxson, Trunkey, Sterrett, Green and Clark, JJ.

Error to the Court of Common Pleas, No. 1, of *Philadelphia county:* Of January Term, 1884, No. 209.

[Briggs v. Garrett.]

This was an action .of trespass on the casè brought by Amos Briggs against Philip C. Garrett for libel.

The plaintiff in his *narr.* set out with appropriate innuendoes the libellous matter, to wit: A letter written by T. J. Love-grove to defendant as president of the committee of one hundred, charging that the defendant did falsely and maliciously publish, procure and cause to be published of and concerning the plaintiff, and of and concerning the plaintiff in his official capacity to wit: A judge of the Court of Common Pleas No. 4, of the county of Philadelphia, said libellous letter.

The defendant pleaded not guilty.

The facts of the case, as they appeared on the trial before PIERCE, J., are fully set out in the opinion of the Supreme Court.

On motion of the defendant after the plaintiff had closed his testimony the court granted a compulsory nonsuit and entered judgment thereon.

This the court in *banc* refused to take off.

The plaintiff thereupon took this writ assigning for error the refusal of the court to submit the case to the jury, the entering, the judgment of nonsuit and the refusal of the court in *banc* to take off said judgment of nonsuit.

*Amos Briggs, P. P.*, for plaintiff in error.— (1) The Lovegrove letter is libellous *per se.*

"A libel is any malicious publication written, printed or painted, which by words or signs tend to expose a person to ridicule, contempt, hatred, or degradation of character": Pittock *v.* O'Niell, 63 Pa. St., 258; McCorkle *v.* Binns, 5 Binn., 340.

If it be libellous even, in one of two senses, all that is required in such case, is an innuendo averring that the words were used in the libellous sense. It is then for the jury to determine, whether the words were used in that sense, or not: Hays *v.* Brierly, 4 Watts, 393; Pittock *v.* O'Niell, 63 Pa. St., 258; Stitzell *v.* Reynolds, 59 Id., 491; Brickner *v.* Potts, 12 Id., 201; Vanderlip *v.* Roe, 23 Id., 82; McKennon *v.* Greer, 2 Watts, 352; Dottarer *v.* Bushey, 16 Pa. St., 204; Gosling *v.* Morgan, 32 Id., 273; Evans *v.* Tibbins, 2 Grant, 451.

For the defendant to say, "Here is a statement made by Lovegrove, etc., is no defence: Runkle *v.* Meyer, 3 Yeates, 518; Fitzgerald *v.* Stewart, 53 Pa. St., 343; Pease *v.* Shippen, 80 Id., 513.

2. The publication of the letter by the defendant was not excusable on the ground of privilege. In discussing this feature of the case, we should observe the distinction which so clearly exists, between the libel of a private citizen and the

libel of a judge of a court of record, of and concerning an act falsely alleged to have been corruptly done in the performance of his official duties. In view of this distinction we confidently assert that no analogy can be deduced from the decisions in suits between private citizens, which will aid us in the solution of this contention.

If such privilege exists it would be found in the 7th § of the Declaration of Rights. The only privilege that this provision confers is for the defendant in a criminal prosecution.

This court, in Barr *v.* Moore, 87 Pa. St., 393, has already emphasized the view for which we contend, by the employment of these expressive words:

" The security of a person's reputation or good name from the arts of detraction and slander, are rights to which every man is entitled by reason and natural justice."

The doctrine of Barr *v.* Moore is applied in the fullest sense to candidates for office in Seely *v.* Blair, Wr., (Ohio,) 358 and 683.

" As to the point urged that the plaintiff was a candidate for office and the defendant an elector, I need only say, the relation of the parties to each other, or to the public, confers upon the defendant no right to utter falsehood and calumny. An elector may freely canvass the character and pretensions of officers and candidates, but he has no right to calumniate one who is a candidate for office with impunity. If the law sanctioned such a course, it would drive good men from the administration of public affairs, and throw our government into the hands of the worthless and proffigate."

The law of New York is the same: In Hamilton *v.* Eno, 81 N. Y., 126; Negley *v.* Farrow, 60 Md., 158; Duncombe *v.* Daniell, 8 C. & P. 222; Rowand *v.* DeCamp, 96 Pa. St., 501. The same principle is declared in Sweeny *v.* Baker, 13 W. Va., 185; Commonwealth *v.* Clapp, 4 Mass., 163; Aldrich *v.* The Press Printing Co., 9 Minn., 133; Lewis *v.* Few, 5 Johns., 1; Root *v.* King, 7 Cowen, 613; King *v.* Root, 4 Wend, 113; Harwood *v.* Astley, 1 B. & P., N. R., 47.

The private character of a candidate cannot be defamed: Rearick *v.* Wilcox, 81 Ill., 77; Hook *v.* Hackney, 16 S. & R., 385.

The defendant had notice that the plaintiff had nothing to do with the trial of the Hart Creek sewer cases.

" Where inquiry becomes a duty, the party who neglects to perform it, should be visited with at least constructive notice of the facts that probably would have been brought to light, if it had been duly made ": Mr. Justice STERRETT, in Leonard's Appeal, 94 Pa. St., 176.

[Briggs v. Garrett.]

3. The evidence exhibits the elements of malice which should go to the jury for their solution.

*Richard P. White,* (*George H. Earle, Jr.,* with him), for plaintiff in error.—The simple question in this case is whether a citizen of this republic is to be held to have committed a crime for which he may be deprived of his property or even liberty at the caprice of a jury, however ignorant or prejudiced it may be, whenever he asks other citizens, before giving their suffrage to a candidate, to consider and investigate with him a written charge made by another reputable citizen against that candidate.

The nonsuit was properly entered in this case, because the publication complained of was not libellous *per se,* and the innuendo by which it was sought to give the words used a libellous meaning was bad without a colloquium, and if a colloquium had been added there was no evidence to sustain it. A word which does not necessarily import criminality is in pleading rendered actionable only by reference to extrinsic facts which show it to have been used in an obnoxious sense: Deford *v.* Miller, 3 P. & W., 103; Flitcraft *v.* Jenks, 3 Wh., 158; Lukehart *v.* Byerly, 3 P. F. S., 421; Stitzell *v.* Reynolds, 9 Id., 490.

The publication was privileged, and no action could therefore be maintained without proof of express malice.

A communication made in good faith upon any subject matter in which the party communicating has an interest, or in reference to which he has a duty, public, private, legal, moral, or social, if made to a person having a corresponding interest or duty, is privileged, and in such case the inference of malice is rebutted and the onus of proving malice is cast upon the person defamed: Gray *v.* Pentland, 4 S. & R., 420; Marks *v.* Baker, Rep., vol. 12, p. 530; Laughton *v.* Bishop of Sodor, L. R., 4 P. C., 495; Quinn *v.* Scott, 22 Minn., 456; Toogood *v.* Spyring, 1 C. M. & R., 193.

When the matter is of public interest to the community, that is sufficient to confer the privilege: Kelly *v.* Tinling, L. R., 1 Q. B., 699; Purcell *v.* Sowler, 1 C. P. D., 781; Palmer *v.* Concord, 48 N. H., 211; Cooley on Torts, 217.

Where the subject matter is of interest to taxpayers it is privileged if made in good faith: Smith *v.* Higgins, 16 Gray, 251; Bush *v.* Prosser, 11 N. Y., 347.

If there is probable cause, it is of no consequence that the libel was malicious: Cook *v.* Hill, 3 Sandf., 350; Klinck *v.* Colby, 46 N. Y., 427; Bradley *v.* Heath, 12 Pick.. 163; Waller *v.* Locke, 45 L. T R., 243.

When the occasion is privileged good faith is presumed,

and this presumption is not overcome by evidence that the charge was false. Probable cause is a full defence: Ormsby v. Douglass, 37 N. Y., 477; Remington v. Congdon, 2 Pick., 311; Thorn v. Blanchard, 5 Johns, 508; Howard v. Thompson, 21 Wend., 319. Cited with approval in Chapman v. Calder, 2 Harris, 368.

Charges made by a taxpayer at a public meeting against a candidate are privileged: Spencer v. Amerton, 1 Moody & Rob., 470. See also Commonwealth v. Odell, 3 Pittsb., 449; Mayrant v. Richardson, 1 Nott & McC., 347; Brockerman v. Keyser, 5 Clark, 152; Harle v. Catherall, 14 L. T. R., N. S., 801; McIntyre v. McBean, 13 U. C., Q. B., 540; Ormsby v. Douglass, 37 N. Y., 479; Howard v. Thompson, 21 Wend., 319; Streety v. Wood, 15 Barb., 105; Van Wyck v. Aspinwall, 17 N. Y., 193; Thorn v. Blanchford, 5 Johns., 508; Chapman v. Calder, 2 Harris, 368; Gray v. Pentland, 4 S. & R., 420; Whiteley v. Adams, 15 C. B., N. S., 417.

A candidate for office must be considered as putting his character in issue, so far as regards his fitness for the office: Brockerman v. Keyser, 5 Clark, 152; Commonw. v. Clap, 4 Mass., 163; Mayrant v. Richardson, 1 Nott & McC., 347; Goddard v. George, 2 Foster & F., 689.

No criticism of a person holding public office is libellous unless it is malicious: Harte v. Catherall, 14 L. T., N. S., 801.

The question of privilege or no privilege must be passed upon by the court, and is not a question for the jury: Henwood v. Harrison, L. R., 7 C. P., 626; Somerville v. Hawkins, 10 C. B., 583; Spill v. Maule, L. R., 4 Ex., 232; Clark v. Molyneux, 3 Q. B. D., 237; Lewis v. Chapman, 16 N. Y., 372; McIntyre v. McBean, 13 U. C., Q. B., 540.

Where the occasion is a proper one, the publication of defamatory matter, even though it prove to be incorrect, will not be sufficient to subject the publisher to the mercy of that greatest of uncertainties — the caprice of a jury. That in fact nothing short of proof of actual, express malice will suffice: Billings v. Fairbanks, 136 Mass., 177; Shurtleff v. Stevens, 51 Vt., 501; Commonwealth v. Pavitt, 40 Leg. Int., 454; Commonwealth v. Smethurst, 40 Id., 446; Palmer v. City, 48 N. H., 211; Kent v. Bongartz, 1 Eastern Rep., 616; Liles v. Gaster, 42 Ohio, 636.

Mr. Justice PAXSON delivered the opinion of the Court, January 25th, 1886.

This was an action for a libel. The plaintiff was nonsuited in the court below and this writ of error was taken to the refusal of the court to take it off.

It is necessary to an intelligent discussion of the law of the case that we should premise it by an accurate statement of the facts. I take them as given by the plaintiff in his history of the case, or proved by his witnesses upon the trial.

During the year 1882, the plaintiff.was an associate judge of the Court of Common Pleas, No. 4, for the County of Philadelphia. In the month of September of that year, he was nominated for re-election to that office. At that time there was in existence in the city of Philadelphia, a voluntary association of citizens known as the "Committtte of One Hundred," of which the defendant, Philip C. Garrett, was the chairman. It is unnecessary, and perhaps would be improper in a judicial opinion, to discuss the object and work of that committee. It is sufficient for the purposes of this case to say that it was composed of gentlemen of the highest respectability, and that its object was political, confined, however, generally to matters of a municipal character. The rights of the committee whether as a body or as individuals, were precisely those of any other citizens—neither more, neither less. At a public meeting of the committee held on the sixteenth day of October, 1882, at which the reporters of the city papers were in attendance, and in their presence and hearing the defendant stated that he had received a letter from an ex-city-official, in which it was stated that it was only by the charge of Judge Briggs to the jury, that the $200,000 steal in the Hart Creek sewer case, had been made possible. The defendant then handed the letter to the secretary of the committee, with the remark that the secretary will read the letter. The secretary then read the letter aloud in the presence and hearing of all present. It was as follows:

10 | 11 | 82.

*Philip C. Garrett, Esq., President of the Committee of a Hundred.*

MY DEAR SIR: The Hart Creek sewer steal of $200,000 was only made possible by Judge Briggs' charge to the jury. See the charge and reflect on the facts. In the first place, the specifications were drawn for the express purpose of driving off all but ring bidders. Second, there was no effort made to hold the contractor to the specifications. He was allowed to tooth the bricks, when the specifications called for racking back. Third, the specifications called for a sewer impervious to water, when it was in evidence that a large number of crevices would hold a happy family of animals. Fourth, all the measurements were made by city officials in favor of the contractor. In one measurement the sewer was measured $30,000 too long. Your obedient servant,

T. J. LOVEGROVE,
One of the Hart Creek sewer experts.

[Briggs *v.* Garrett.]

The writer of this letter was a mechanical expert and at one time had been an official in the service of the city. It was not denied that he was a respectable citizen. It is equally clear that Judge Briggs did not charge the jury in the Hart Creek sewer case. It was not even tried in his court, and it was conceded that the charge of the learned judge who did, try it, was fair, impartial, and in every way proper. Upon a motion for a new trial his rulings were unanimously sustained by the court in *banc*.

Mr. Lovegrove, the writer of the letter, when on the stand, acknowledged that the letter, so far as it connected Judge Briggs with the sewer case, was a mistake and that it was his (Lovegrove's) mistake. He further stated that he did not communicate with Mr. Garrett, directly, or indirectly, about the letter before sending it. It also appeared that a few days after the letter was read to the committee, Mr. Garrett received a communication stating that it was Judge Fell and not Judge Briggs who tried the sewer case, which letter was read in the same way, and with the same publicity, before the committee by Mr. Garrett.

The court below, upon this state of facts, held that the letter came within the class of privileged communications, in which malice is not presumed, and as no actual malice was proved upon the trial, entered a judgment of nonsuit, which judgment the court in *banc* subsequently sustained.

In what follows we shall consider merely the responsibility of the defendant for his part in this transaction. We have nothing to do with Lovegrove, the writer of the letter, who originated and sent forth the charge against Judge Briggs. The defendant must answer precisely as any other citizen and voter.

Was the letter a libel? We listened to an ingenious and labored argument at bar, to show that it was not. It may be that a trained lawyer, reading it with care, would understand that the judge in his charge to the jury was constrained by the law, or the state of the evidence before him, to charge in the way he did, although the result might be an unrighteous verdict. This is often the case and yet no blame can be imputed to the judge. But would the public so regard it? There was no allegation that the object of the letter was to commend the action of Judge Briggs in the Hart Creek sewer case. That it was intended as a reflection, is too plain for argument. And assuming the statements contained in the letter to be true, regard being had to the excited state of the public mind at that time in reference to municipal corruption, we can understand that it would have a damaging effect upon the public mind. Those who knew Judge Briggs, and the perfect integ-

rity with which he carried himself in his high office, would not be influenced by such a letter.

It is not necessary, however, in the view we take of the case, to discuss this question at length. We shall assume the letter to be actionable, unless excused by the circumstances attending its publication.

This brings us face to face with the question, in what manner and to what extent the fitness of a candidate for a public office may be discussed by the people, whose votes may elect or defeat him. It is a question of supreme importance, involving on the one hand the liberty of the press; on the other, the rights of the people to be secure in their property and reputation. Both are provided for in Article 1, Section VII., of the Constitution, which declares:

" The printing press shall be free to every person who may 'undertake to examine the proceedings of the legislature or any branch of government, and no law shall ever be made to restrain the right thereof. The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty. [No conviction shall be had in any prosecution for the publication of papers relating to the official conduct of officers or men in public capacity, or to any other matter proper for public investigation or information, where the fact that such publication was not maliciously or negligently made, shall be established to the satisfaction of the jury, and in all indictments for libels the jury shall have the right to determine the law and the facts under the direction of the court, as in other cases."]

The portion of the section enclosed in brackets is new; the balance thereof is to be found in the Constitution of 1838. The new portion refers only to a trial upon an indictment for libel, and does not apply to a civil action to recover damages: Barr v. Moore, 87 P. S. Rep., 385. Its discussion at present, is therefore unnecessary.

The right of the citizen here given to " freely speak, write or print," is as broad as language can make it, with the single limitation that he shall be responsible for the abuse of that privilege. Did Mr. Garrett abuse it?

When Judge Briggs accepted the nomination as a candidate for re-election to the judicial station which he then filled, he threw out a challenge to the entire body of voters of the county of Philadelphia, to canvass his qualifications and fitness for that position. That involved in the " fierce light that beats upon the bench," not only his official conduct for the term about closing, but generally his fitness for the position of judge. In this may be included many things beyond

.[Briggs *v.* Garrett.]

mere legal knowledge. A man may be a learned lawyer and yet be wholly unfit for judicial station.. There may be faults of temper, mental idiosyncrasies, and such manner of walk and conversation in private life, as a people, jealous of the reputation of their judiciary, would never tolerate. If, therefore, these are elements proper for consideration in forming an estimate of judicial character, they are proper subjects for discussion within the limits defined by the Constitution. What those limits are, I shall endeavor as briefly as the importance of the subject will allow, to point out so far as they affect this case. As preliminary to this discussion, it may not be out of place to refer to the latest deliverance of this court upon this subject. It will be found in *ex parte*, Steinman and Hensel, 95 P. S. Rep., 220. In that case the plaintiffs in error, who were editors of a newspaper, as well as members of the bar, were disbarred by the court below for publishing an article in their paper reflecting on the official conduct of the Court. The order was reversed by this court in an opinion by the late Chief Justice SHARSWOOD, in the course of which he said : " Judges, in 1835, were appointed by the Governor, and their tenure of office was during good behavior. There might then be some reason for holding that an appeal to the tribunal of popular opinion was in all cases of judicial misconduct a mistaken course and unjustifiable in an attorney. The proceedings by impeachment or by address, were the course, and the only course which could be resorted to effectually to remedy the supposed evil. To petition the legislature was then the proper step. To appeal to the people was to diminish confidence in the courts and bring them into contempt without any good result. We need not say that the case is altered and that it is now the right and the duty of a lawyer to bring to the notice of the people who elect the judges every instance of what he believes to be corruption or partisanship."

A lawyer, by reason of his constant intercourse with the court, has greater facilities for forming a correct opinion of the character of the judge. But he has no higher right to comment thereon than has the citizen who elects him, and whose life, liberty and property may depend upon his official action.

In considering Mr. Garrett's liability for what occurred on the 16th of October, we must confine ourselves to his own acts. He made no charge against Judge Briggs, nor did he endorse one. He had no knowledge or information in regard to the subject matter of the charge, nor did he profess to have. He received a letter from a reputable citizen, addressed to him as chairman of the committee, containing certain statements about Judge Briggs, then a candidate before the people for re-election.

[Briggs *v.* Garrett.]

If true, the matter was important and proper for public information. The plaintiff concedes this. The letter was intended, as its address plainly indicates, not for Mr. Garrett individually, but for the committee. He was merely the conduit through which it was to pass. What did he do? As before stated he said to the committee that he had received a letter from an ex-city official containing a charge (specifying it) against Judge Briggs. This was true; he had received such a letter and it did contain such a charge. He then, in the usual course of business, handed the letter to the secretary with instructions to read it and it was read. This is the sum of Mr. Garrett's offending. Much stress was laid upon the fact that the reporters were present and that the letter was scattered broadcast over the country next morning by the press. But for this the newspapers were responsible, and whether their act was justified or otherwise, is a matter for which Mr. Garrett cannot be held responsible. It was not his act.

Was Mr. Garrett justified in giving the letter to the committee in the manner he did? As it was not a private letter, but addressed to the committee through him, he might perhaps have questioned his right to withhold it from those for whom it was intended. But we will not decide the case upon such a narrow point as this. We prefer to meet the broad question prescribed by the record.

As before observed, Mr. Garrett had no knowledge as to the truth of the matters alleged in the letter. The plaintiff contends he had no right to make public its contents without having first made an investigation into the facts, and the words in the letter, " see the charge and reflect on the facts," were pressed upon our attention as being calculated to put him upon inquiry. But we do not place such a construction upon this language. It was intended to emphasize the charge contained in the letter, not to express a doubt as to its truth.

On the other hand, the defendant contended that the letter was a privileged communication; that it was written in good faith; that it was sent to Mr. Garrett and by him communicated to the committee in good faith, and for a proper purpose; that if true, the matters alleged were proper for public information; that if untrue, it was still privileged unless the parties knew it to be false, and therefore malicious. The plaintiff admits that if it was privileged no recovery can be had without proof of actual malice. There was no proof of actual malice upon the trial, and it is almost unnecessary to say that the law does not imply malice in a privileged communication.

This brings us to the vital question in the cause. Was this letter a privileged communication?

We are met here with the inquiry, is falsehood privileged? I answer no. A lie is never privileged. It always has malice coiled up within it. When a man coins and utters a lie, or when he repeats it knowing it to be false, the law implies malice and he cannot shelter himself behind the doctrine of privileged communications. I may illustrate this by the familiar instance of an inquiry into the character of a servant. If I say I believe him to be a thief upon information derived from others, or from facts and circumstances within my own knowledge,—in other words, if my statement is based upon probable cause, the communication is privileged and I am not responsible, even though it should appear that I was entirely mistaken. If, on the contrary, I knowingly and falsely accuse him of dishonesty, such charge is not privileged and I am liable in damages for the consequences of such statement.

We have no concern with the knowledge or motive of the writer of the letter. Conceding for the purposes of this case that every word contained therein is false, and was known to be so by the writer; that it was sent out of pure malice to injure and defame Judge Briggs; no such knowledge was brought home to Mr. Garrett, nor is there anything in the case from which it could justly be imputed to him. So far as he is concerned, it was a mistake, nothing more. The difference between an honest mistake made in the pursuit of a proper object, and a wilful falsehood coined for the purpose of deception, is so palpable, that we may well be excused from dwelling upon it at length. It is mistakes, not lies, that are protected under the doctrine of privilege.

A communication to be privileged must be made upon a proper occasion, from a proper motive, and must be based upon reasonable or probable cause. When so made, in good faith, the law does not imply malice from the communication itself as in the ordinary case of libel; actual malice must be proved before there can be a recovery. And whether a communication be privileged or not is a question for the court, not the jury.

An action for libel is upon all fours with an action for a malicious prosecution. The latter is but an aggravated form of an action for libel, as in it the libel is sworn to before a magistrate. The cases make no distinction between them. When, therefore, a man may charge another under oath before a magistrate with a high crime, without responsibility therefor, provided he acts upon probable cause, surely he may upon probable cause charge a candidate for a public office with an act, which if true, would render him an unfit person to receive the suffrages of the people. And if probable cause exists in either case, the question of malice becomes of no importance. It is

[Briggs *v.* Garrett.]

useless to cite the authorities upon this point, they all agree. I will refer, however, in passing, to Chapman *v.* Calder, 2 Harris, 365; Winebiddle *v.* Porterfield, 9 P. S. R., 137; Travis *v.* Smith, 1 Id., 234.

Before I proceed further, I will notice some of the cases in which the principle has been applied. In Gray *v.* Pentland, 2 S. & R., 23, it was held that accusations preferred to the Governor against a person in office, are so far in the nature of judicial proceedings, that the accuser is not held to prove the truth of them. It is excused if they did not originate in malice and without probable cause. In other words that the accusations were privileged and raised no presumption of malice. It was not contended in that case, nor do I know that it has been in any other, that a man may use the cloak of a privileged communication as a cover for malice and falsehood.

In Marks *v.* Baker, 12 Rep., 530, the principle is thus stated by the Supreme Court of Minnesota: " The rule is that a communication made in good faith upon any subject-matter in which the party communicating has an interest, or in reference to which he has a duty, public or private, either legal, moral or social, if made to a person having a corresponding interest or duty, is privileged; that in such case the inference of malice is cast upon the person claiming to have been defamed." To the same point are Quinn *v.* Scott, 22 Minn., 456; Laughton *v.* Bishop of Sodor, L. R., 4 P. C., 495; Toogood *v.* Spyring, 1 C. M. & R., 193; Harrison *v.* Bush, 5 E. & B., 344; Addison on Torts, § 1091; Moak's Underhill on Torts, 146. If fairly warranted by any reasonable occasion or exigency, and honestly made, the communication is protected for the common convenience and welfare of society: Toogood *v.* Spyring, *supra*. It is sufficient to confer the privilege that the matter is of public interest to the community: Kelly *v.* Tinling, L. R., 1 Q. B. 699; Purcell *v.* Sowler, 1 C. P. D., 781; Palmer *v.* Concord, 48 N. H., 211; Cooley on Torts, 217. And when the subject-matter is of interest to taxpayers the communication is privileged if made in good faith: Smith· *v.* Higgins, 16 Gray, 251: Bush *v.* Prosser, 11 N. Y., 347. Where the communication is privileged plaintiff must show that it was not true and that defendant had no reasonable grounds to believe that it was true: McIntyre *v.* McBean, 13 Upper Canada, Q. B., 540. When the communication is privileged and made or used in good faith, the plaintiff must sue the original slanderer, not him who repeats it in good faith: Derry *v.* Handley, 16 L. T., N. S., 263. I conceive the law to be that, though that which is spoken or written may be injurious to the character of the party, yet if done *bona fide*, as with a view to the

investigation of a fact in which the party is interested, it is not libellous: Lord ELLENBOROUGH in Delany v. Jones, 4 Esp., 191. If there is probable cause it is of no consequence that the libel was malicious: Streety v. Wood, 15 Barb., 105; Cooke v. Hill, 3 Sandf., 350; Klinck v. Colby, 46 N. Y., 427; Bradley v. Heath, 12 Pick., 163. In an action for a libellous communication to the appointing power, held that the principles applicable for suits for a malicious prosecution govern, and probable cause is a full defence: Howard v. Thompson, 21 Wend., 319; Thorn v. Blanchard, 5 Johns., 509. In case of a privileged communication probable cause is a bar to the suit: Chapman v. Calder, 14 P. S. Rep., 365. Charges made by a taxpayer at a public meeting are privileged: Spencer v. Amerton, 1 Moody & Rob., 470. One of the strongest cases of privilege is that of Brett v. Watson, 20 Weekly Reporter, 723, where the defendant was employed to find out the character of a house. He was informed that it was a house of prostitution, and it was false. He repeated what he had been told to others, his object being *bona fide* to ascertain the character of the house. It was held that his communications were privileged. It is needless to multiply authorities. The doctrine of the foregoing cases is fully recognized in our own cases of Gray v. Pentland, 2 S. & R., 23; Flitcraft v. Jenks, 3 Wh., 158; Chapman v. Calder, 2 Harris, 365; Brockerman v. Keyser, 5 Clark, 152.

A number of authorities were cited by the plaintiff which he contended were in conflict with the foregoing. Among others was Barr v. Moore, 87 P. S. Rep. 385. The most that can be made of that case is that it ruled that the publication in question was not privileged, and therefore was governed by the ordinary law of libel. No one doubts the accuracy of that ruling. The article was not only a libel upon its face, it was utterly false; was coined by the party who published it, without even a pretence that there was probable or reasonable ground to believe the charges were true. The pretence that it was proper for public information was a mere cloak to cover up malice, and to publish a falsehood for political effect. That case was decided upon sound principles and does not touch the one in hand. The language of the court must be considered in connection with its facts.

Rowand v. DeCamp, 96 P. S. Rep., 493, also cited by plaintiff, was an action of slander against a public officer. The charge was that he was a "damned thief," and that "if any of the borough bonds (meaning the Borough of Vernona bonds) came into his hands (meaning the plaintiff's) he would steal them and run away with them." It was not shown that the charge was true or that there was probable cause to make it.

OF PENNSYLVANIA.

[Briggs v. Garrett.]

As before observed, mere lies are not privileged. A man may not charge a public officer with being a thief, knowing it to be false, and in the absence of reasonable, probable cause the *scienter* will be presumed. Malice follows of course. Public officials are not outlaws, to be hounded and maligned at the will of every person who may have incurred their enmity, and no well considered case has so decided. There is no room for the application of the doctrine of privilege to such instances.

Some stress was laid upon the fact that even if the reading of the letter to the committee of One Hundred was excusable on the ground of privilege, the privilege was taken away because of the presence of the reporters, and Parsons & Surgey, 4 F. & F., 247, was cited in support of this view. But the circumstance was overlooked that the reporters were also citizens and voters; they had the same interest in the fitness of Judge Briggs for judicial station as had the committee or any other citizens. If it was proper to read the letter at all, it was proper to do so in their presence and hearing.

Hamilton v. Eno, 81 N. Y., 126, and several other cases cited to show that to falsely accuse a public officer of a crime is not privileged, are wide of the mark. Supposing the letter to impute crime to Judge Briggs, whether it be misbehavior or corruption in office, we must not lose sight of the fact, that Mr. Garrett made no such charge. He made no charge whatever. All he said was that some one else had made a charge in writing, stating briefly what Judge Briggs had been charged with, giving the name of the writer, and the letter itself to the committee. How widely this differs from originating a false charge is plain to the dullest comprehension. I call attention to the facts of the case again that we may not be led astray upon a false issue.

The case narrows itself down to this. Conceding that a public officer, or a candidate for a public office, may not be falsely and maliciously charged with crime, or with anything else injurious to his reputation, have the voters whose suffrages he solicits, the right to canvass and discuss his qualifications, openly and freely, without subjecting themselves to fine or imprisonment, or a ruinous suit for damages? If the voters may not speak, write or print anything but such facts as they can establish with judicial certainty, the right does not exist, unless in such form that a prudent man would hesitate to exercise it. Is not the fact that a candidate is charged with crime by reputable citizens, a matter proper for public information? Suppose, in the case in hand, the charge against Judge Briggs had been one for which he might have been indicted. Is it possible that when two or three voters are gathered together, or where two or three hundred are assembled to consider his

[*Briggs v. Garrett.*]

fitness for his office, the fact that such a charge had been made may not be stated by one voter to the other without the peril of being mulcted in damages in case the charge should subsequently appear to be unfounded? And this for an office for which the incumbent or the candidate should be like Cæsar's wife? A man's reputation may be bad upon many points that it would be difficult to prove. So long as he remains in private life it matters little. But when he becomes a candidate for office, even his private vices may become a matter of public concern. There are some official positions as to which the people are properly jealous of the character of those who aspire to them. The judicial office is one of them, and it is not too much to say that there are many private vices which the people would not tolerate, if openly and notoriously indulged in by a judge. They would tear the ermine from his shoulders and hurl him from the bench. If then a candidate be a person of evil repute in the sense that it affects his fitness for the office which he seeks; if respectable citizens honestly so believe and so state, may not such statement be repeated by others in connection with the canvass, at proper times and upon proper occasions without the penalty of a libel suit? If not, we have indeed fallen upon evil times, and our boasted freedom is but a delusion. The principle contended for here, if sustained by this court, would put a padlock upon the mouth of every voter, and intelligent free discussion of the fitness of public men for office would cease. It would be a burden too grievous to be borne, and the people would be swift to reverse our decision, either by an Act of Assembly, or if necessary, a change in the organic law.

However unfounded the statements in the letter are now acknowledged to be, it is clear to our view that Mr. Garrett had probable cause for handing it to the committee, and had the charge been of a criminal nature, there was probable cause for a prosecution.

Referring to the three tests of privileged communications to which I have already alluded, they will all be found in this case. The occasion was a proper one. The meeting was composed of a body of citizens and voters assembled for this very purpose of considering the merits of candidates for office. At such meeting it certainly was the right, if not the duty, of any person present to state any fact bearing upon the fitness of either of said candidates for the positions they respectively aspired to. The circumstance that one of the candidates had been charged by a reputable citizen with conduct which was not consistent with a proper performance of official duty, was a fact which every elector present had a right to know and state. For aught that appears it was done from a proper motive, and

[Briggs v. Garrett.]

we have already said it was based upon probable cause. It was a mistake, but an honest one, and corrected as soon as discovered. It was a subject of just annoyance to Judge Briggs, and if the law does not furnish him the redress he seeks, it is because of a rule of public policy of far more importance than the inconvenience of a single citizen. That rule requires that free discussion, especially upon political topics and candidates, shall not be so hampered, as to make its exercise dangerous. The rule furnishes no shelter for the malicious libeller of private character, but it will not impute malice to one who honestly acts upon information received from other reputable citizens. We are accustomed so to act in all the affairs of private life, and if we restrain it in public matters, we afford protection to all the rogues and thieves, who may by their own cunning or the negligence of the people, get into public office.

In the enforcement of all general rules there will always be cases of individual hardship. But this is the sacrifice which the individual must make for the public good, just as the soldier is shot down in battle to preserve for others the blessings of free government. Speaking for myself, I would rather endure undeserved reproach, than by any act of mine to impair a rule of so much importance to the public welfare. The people, sometimes hasty, are in the end always just, and will not long permit any public man to remain under a cloud, unless it is one of his own raising.

Judgment affirmed.

Mr. Chief Justice MERCUR filed a dissenting opinion in which GORDON and STERRETT, J. J., concur.

With all due respect for the judgment of the majority of this court, I must dissent therefrom. I will state some of the reasons which move me to this conclusion.

The only question before us is whether the court below erred in not submitting the case to the jury. Although there may have been circumstances proper to consider in mitigation of damages, yet if in any aspect of the case the facts should have gone to the jury, it was error to withhold them.

It is well settled law that any malicious publication written, printed or painted, which by words or signs tends to expose a person to contempt, ridicule, hatred or degradation of character, is a libel; and the person libelled may recover damages, unless it be shown that the publication was true, or that it was justifiably made: Pittock v. O'Niell, 63 Pa. St., 253; Barr v. Moore, 87 Id., 385; Neeb v. Hope, 17 W. N. C., 93.

While malice is an essential element in an action of libel, yet that must be understood in its legal signification. It may

[Briggs *v.* Garrett.]

exist in the absence of lawful excuse, and where there may be no ill-will or disposition to injure others. Legal malice alone is sufficient to support an action. If a publication have the other qualities of a libel and it be wilful and not privileged, malice may be inferred: Id. An act unlawful in itself and injurious to another, is considered to be done *malo animo*: Pittock *v.* O'Niell, *supra.*

Where the words used are of dubious import, they are to be interpreted according to the sense in which they were actually used: Hays *v.* Brierly, 4 Watts, 392. The words of a libellous publication are to be taken in their natural sense. Words are not to be received in *mitiori sensu,* but in the plain and popular sense in which the world in general understands them: Lukehart *v.* Byerly, 53 Pa. St., 418.

It is elementary law that every one who prints or publishes a libel may be sued by the person defamed, and to such an action it is no defence that it was printed or published by the desire or procurement of another, whether that other be made a defendant to the action or not. All concerned in publishing the libel or in procuring it to be published, are equally responsible with the author: Odger on Libel and Slander, *157; Townshend on Slander and Libel, 167.

The letter, for the publication of which this suit was brought, contains a strong imputation against the integrity of the plaintiff, and that it was only by his official action and charge to the jury that a specified steal of $200,000 was made possible. He was then serving as judge and was a candidate for re-election—giving to the language of the letter the plain and reasonable sense in which people generally would understand it, there cannot be any doubt that it imputes to him great misconduct, or degredation of official character. So understood they were libellous *per se,* and presumptively actionable. To remove this presumption the burden of proof is thrown on the defendant.

It is conceded that the charge against the plaintiff was unqualifiedly false. He gave no charge to the jury in the "Hart Creek sewer" case, and was not in any manner connected with the trial relating thereto. Admitting this to be so, it is claimed on the part of the defendant that the publication was privileged.

It is certain that the publication in this case was not made under circumstances to be what the law declares to be *absolutely privileged.* It was not published in any legislative body known to the law; nor was it in any judicial proceedings. At most the occasion could not make the publication any more than a *qualified privilege.* When a defendant charged with libel, invokes such a protection to shield him from liability

for that for which he would otherwise be held responsible, he must prove that the occasion and surrounding circumstances made his action justifiable.

The natural right of personal security consists in a person's legal and uninterrupted enjoyment of his life, his limbs, his body, his health and his reputation: 1 Bl. Com., 134. The security of his reputation or good name from the acts of detraction and slander are rights to which every man is entitled by reason and natural justice. The right to protect reputation is inherent in man. A good reputation is too valuable to admit of its being falsely and wrongfully assailed, without the law giving some redress to the person injured: Barr v. Moore, 87 Pa. St., 385. A reasonable and fair communication of thoughts and opinions is an invaluable right of man, yet a check on such freedom is imposed by the Constitution of this Commonwealth. Thus, Art. 1, Section 7: Thereof *inter alia* declares that " every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty." Thus, this right or liberty is not one of unlimited license, but is restrained by a legal responsibility: Barr v. Moore, *supra.*

That the merits and demerits affecting the qualifications and character of one who is a candidate for a judicial office, as well as of one who is a candidate for any other public office, may be freely discussed and commented on, cannot be successfully questioned. These comments, however, have their bounds and limits. The right to discuss and to comment does not imply a license to falsely charge a person holding a judicial position, who is a candidate for re-election, with a specific act reflecting on his judicial integrity, and calculated to bring him into contempt and ridicule. Whenever a person makes such a charge and claims protection under the name of a qualified privilege, the question of his motive in making it should be submitted to the jury. In my opinion, it is clear error for the court to decide as matter of law, that there was neither actual nor legal malice to be implied from the false charge.

The well recognized rule of law is correctly stated in Odgers on Libel and Slander, 199. He says, " If, indeed, there were any means at hand for ascertaining the truth, of which the defendant neglects to avail himself, and he chooses rather to remain in ignorance when he might have obtained full information, there will be no pretence for any claim of privilege."

.In the present case the defendant was asked by his informant to " see the charge " of the judge, and to " reflect on the facts " shown thereby. In other words, to look at the record and inform himself whether the construction put on the charge by the writer of the letter was correct. That record was conveniently accessible to the defendant. Any such record was

[Briggs *v.* Garrett.]

a public record kept in the centre of this city. The means were readily at hand for him to ascertain the truth. He neglected to avail himself of those means, and omitted to make any inquiry. He chose to remain in ignorance. The slightest examination would have shown that the improper conduct attributed to the plaintiff was false. Then, in the language of the law, there can be " no pretence for any claim of privilege." If such an allegation had been made against a personal friend of the defendant, it is hardly possible to conceive that he would have spread it before the public, without first having made some effort to verify its correctness. " The plaintiff, however, is not bound to prove malice by *extrinsic* evidence. He may rely on the words of the libel itself and on the circumstances attending its publication, as affording evidence of malice ": Odgers on Libel and Slander, 270. The falsity of the words implies malice : Farley *v.* Ranck, 3 W. & S., 554 ; Gorman *v.* Sutton, 32 Pa. St., 247. As inquiry became the duty of the defendant before publishing the libel, he must be visited with constructive notice of what he could so readily have obtained by reasonable effort.

It may be asked, are the people to be prevented from criticising and discussing the conduct, character and qualifications of a candidate for office? Undoubtedly they are not. They must, however, confine themselves within the limits of truth or permit a jury to pass upon their good faith and motive, when they make a false charge: Starkie on Slander 110.

In an action for libel it is for the court to determine whether the alleged libel is a privileged communication : but the question of good faith, belief in the truth of the statement, and the existence of actual malice, are questions for the jury.

Without elaborating the case further I earnestly dissent from the action of the learned judge in deciding all these questions as matter of law and in not permitting the jury to pass upon them.

Justices GORDON and STERRETT also dissent from an affirmance of the judgment and concur in this opinion.

[This case was argued in the Supreme Court, January 6th, 1885, CLARK, J., absent. On January 26th, 1885, the court ordered a re-argument before a full bench. It was re-argued January 6th, 1886. The opinion of the court and the dissenting opinion were delivered January 25th, 1886. REP.]