## Cabrey et al. v. Cameron

*H. Lester Haws*, for plaintiffs.

*Desmond J. McTighe*, of *Fox & McTighe*, for defendant.

CORSON, J., November 8, 1945.—Plaintiffs brought two suits as of the above numbers and term to recover damages alleged to have resulted from what each plaintiff alleges to have been a libelous letter, written by the defendant and published in two newspapers— one, "Our Town" in the Borough of Narberth and the other the "Main Line Times", published at Ardmore.

To the statements of claim defendant in each case has filed a demurrer, each alleging 10 reasons in support thereof. These reasons are the same in each case and without reciting them at length they resolve themselves into the following general contentions: (1) That the alleged publication as set forth in the statement of claim is not libelous; (2) that the publication was a privileged communication because of the fact that

under the admitted facts in the statement it was published by defendant as comment upon the fitness of a candidate for public office during a political campaign and that we must take judicial notice of the date of the primary election in 1945, and that such publication was a short time prior thereto; (3) that the alleged communication was a proper exercise of defendant's right to "freely write and print" as provided by the Constitution of Pennsylvania, art. I, sec. 7.

Considering the first question we shall consider the various parts of exhibit A, the communication complained of by plaintiff Walzer. The second paragraph of such exhibit reads as follows: "Do the Republican voters of the borough want a qualified, honest and sincere man (Vincent Colelli) who has done a good job in the office for the past year as their candidate, or do they want an 'Old timer', a former magistrate who brags he rarely ever fined a Narberth citizen, who is not qualified by education or training for the post, who is renowned for his bitterness toward those he dislikes and who was a turncoat to the Republican Party during the Earle administration in Pennsylvania (Fred Walzer)?" This paragraph merely resolves itself into an expression of personal opinion by defendant as to the respective merits of the two candidates for the office of magistrate in the Borough of Narberth. We cannot accept plaintiffs' contention that because defendant speaks of Colelli as a qualified, honest and sincere man, he thereby, by innuendo, insinuates that Walzer was dishonest or insincere. On the contrary, in other paragraphs of the communication defendant says certain nice things about Walzer, and in the paragraph under consideration he merely sets forth his opinion that Walzer is not qualified by education or training for the office of magistrate, which is merely a conclusion and the opinion of the writer and not by any standard libelous. The allegation that Walzer is an "old timer" or that he is bitter toward his enemies are similarly, in

our opinion, not libelous. Plaintiff apparently does not object to the fact that he was referred to as a turncoat, etc., during the Earle administration in Pennsylvania. Walzer complains of the statement that he bragged that he rarely ever fined a Narberth citizen. A "brag" after all is merely a statement, and there would have been nothing improper in such a statement by plaintiff if he had made such a statement and reference to such an alleged statement by defendant is not libelous. Plaintiff might well have been referring to the well-known law-abiding qualities of the good citizens of Narberth and there is no allegation by defendant that he improperly failed to perform his duty by failing to fine citizens of Narberth.

The third paragraph of the communication is not complained of.

In the fourth paragraph Walzer is referred to as the "man Friday" of Cabrey, the other plaintiff. While counsel for Mr. Walzer, in his brief, quotes sections from "Robinson Crusoe" in an attempt to show that Friday was the slave of Crusoe, yet whatever Friday may have been in Defoe's great classic, we must take the word as it is used in our modern life. When a man refers to another in modern times as "my man Friday", he means that such man is his right-hand man, his staunch friend, and a person whom he respects and relies upon. Certainly such a statement cannot, by any stretch of the imagination, be called libelous as a matter of law or fact.

In the fifth paragraph Mr. Cabrey, and perhaps Mr. Walzer also, objects to the use of the word "foisting". We cannot find that this word is libelous even after considering the dictionary definition of the word set forth in plaintiffs' most able and comprehensive brief. It would seem to be clear that the word as used in this paragraph is more or less synonymous with pushing, forcing, or possibly hoisting Mr. Walzer upon the Republican voters, etc.

In the sixth paragraph, after referring to Mr. Walzer as a "shrewd, quick tempered, and quick witted but likeable fellow", it is averred that he is in no way qualified for the office of magistrate. This is a proper expression of opinion, and certainly not libelous.

The seventh paragraph which is complained of by both plaintiffs we copy in full:

"For the record it might also be stated that during Mr. Walzer's former term of service (?) as a magistrate, many of his hearings were conducted at the home of his champion, Mr. Cabrey, who acted as 'attorney' for the defense or prosecutor as it suited his whim. If Mr. Walzer is nominated and elected, Mr. Cabrey again will be the power behind the throne and to all intents and purposes, the 'real' justice of the peace. If that is what Narberth Republicans want, so be it, but I believe they should know what the score is before casting their ballots."

The first allegation that Mr. Walzer had formerly conducted many of his hearings at the home of his champion, Mr. Cabrey, does not allege any illegal act or anything that would hold either of plaintiffs up to ridicule or contempt. It would have been perfectly legal and proper for Mr. Walzer to have had his office and to hold all of his hearings at Mr. Cabrey's home and certainly Mr. Cabrey cannot complain that he is referred to as Mr. Walzer's "champion".

In the next paragraph both parties complain of the statement that Mr. Cabrey acted as attorney for the defense or prosecution "as it suited his whim". Mr. Walzer cannot complain of such a statement because of the fact that as the presiding justice he had the right to allow any person to appear and aid any person in the presentation of his case, whether a prosecutor or defendant. Ordinarily a judge (and a magistrate is a member of the minor judiciary) is allowed to decide what person may appear before him as attorney in his own court.

Plaintiff Cabrey contends that since he was referred to as acting as "attorney", he was charged with practicing law without a license in violation of the Act of July 12, 1935, P. L. 708, 17 PS §1610. It is important, it would seem, in considering this paragraph to note that the word attorney is in quotation marks. This would seem to indicate rather clearly that defendant, in placing such marks around the word "attorney" meant that he was not using it in its ordinary significance as an attorney at law. The fact that a man may often act as "attorney" does not mean that he is engaged in the practice of the law. Many persons not qualified as attorneys at law act as attorneys in fact for other people and such practice is not only entirely legal but entirely proper and necessary to the carrying on of our economic life. The very fact that Mr. Cabrey is alleged to have acted for one or the other of the parties to a suit "at his whim" would certainly seem to indicate that he was not acting at the request of a party to litigation but purely and solely upon his own volition.

While, as plaintiffs' counsel contends, it may be true that it is not necessary for a man to receive a monetary consideration for his acts to make him guilty of the illegal practice of the law, yet it would seem that it would be necessary at least for such person to have been requested to act for another before he could be found guilty of unlawfully appearing for such person. Any such requests are negatived by that part of the statement which states that Mr. Cabrey acted purely upon "his whim".

The next sentence of this paragraph states that if Mr. Walzer is nominated and elected, Mr. Cabrey "again will be the power behind the throne and to all intents and purposes the real justice of the peace". This is merely a statement that Mr. Cabrey is a friend of Mr. Walzer; that Mr. Walzer may be influenced by Mr. Cabrey in his conduct as a justice of the peace.

We see nothing libelous in this statement or certainly nothing sufficiently libelous to take the case to a jury. There isn't the slightest intimation that Mr. Cabrey ever did, or ever will, improperly exercise his influence upon Mr. Walzer or that Mr. Walzer ever has, or ever will, allow Mr. Cabrey so to do.

Every person who comes in contact with other persons is to some degree affected and influenced by such contacts. In Washington we have hundreds of admitted lobbyists who are paid large salaries for the purpose of influencing legislation. These lobbyists in so doing necessarily attempt to influence the members of Congress who enact such legislation. Many citizens write letters to their representatives in Congress and in our own legislature attempting to influence such persons in carrying out their official duties. In this respect judges also are not protected from receiving letters from the most well-intentioned citizens attempting to influence such judges in their official duties.

Mr. Cabrey is apparently a citizen of Narberth and as such has the right to attempt to influence the official acts of any person where he does so legally and properly. There is no allegation or insinuation in this particular statement by defendant that either Mr. Walzer or Mr. Cabrey ever acted illegally or even improperly. Any such possible intimation is negatived by an earlier paragraph in which the defendant states that "Mr. Cabrey is a public-spirited citizen who has done much for Narberth in the past and has its interest, or what he conceives to be its interest, at heart". The last paragraph is not complained of by either plaintiff.

While it is true that in the statements of claim each plaintiff sets forth that defendant did falsely, wilfully, deliberately, wickedly and maliciously publish the communication set forth in exhibit A, yet that communication is such that no verdict of a jury finding it libelous could be sustained. As an example of what we mean let us assume that the statement of claim alleged that

defendant falsely, wilfully, etc., alleged that defendant was the superintendent of a Sunday school and that the innuendo was that since some Sunday school superintendents have been later found to be embezzlers that such statement was libelous. Obviously such a publication could not be found to be libelous whether true or false. For the reasons given we feel that the communication complained of is not libelous and further that it is not sufficient to support a verdict of a jury in favor of either plaintiff.

While our decision upon defendant's first contention is sufficient to cause us to sustain his demurrers, yet we feel that we should also at least comment upon defendant's other contentions.

As to defendant's second contention of privilege, admittedly this communication was not absolutely privileged. However, Mr. Walzer was a candidate for public office. Admittedly defendant was one of the citizens who would be privileged to vote for Mr. Walzer or to vote for his opponent. As such a citizen defendant came under the protection of article I, sec. 7, of the Constitution of the Commonwealth of Pennsylvania, which provides, inter alia, as follows: "The free communication of thoughts and opinions is one of the invaluable rights of man, and every citizen may freely speak, write and print on any subject, being responsible for the abuse of that liberty . . ." Defendant had the right to do exactly what he did so long as there was no "abuse of that liberty" granted him in this section of the Constitution. A candidate for public office is in a different position from other persons. The character and conduct of such a candidate are proper subjects of public discussion and the publication of any facts throwing light on the candidate's qualifications or disqualifications must be considered as privileged: Wallace v. Jameson et al., 179 Pa. 98 (1897) ; Brockerman v. Keyser, 1 Phila. 243 (1851). The question of privilege is for the court to decide: Briggs v. Garrett,

111 Pa. 404 (1886). It would appear that even though a publication may be false, yet, first, if the occasion of its publication was a proper one, and, second, if it was made from a proper motive, and, third, if it was based upon probable cause, then there can be no recovery in libel: Briggs v. Garrett, supra.

In the case at bar the occasion was certainly a proper one because the qualifications of Mr. Walzer were of interest to the voters of Narberth; the publication itself sets forth the motive of defendant in sending such communication to the paper and this motive was certainly a proper one. There is no allegation in the statement to indicate that defendant did not have probable cause.

In Briggs v. Garrett, supra, at page 414, the court said:

"An action for libel is upon all fours with an action for a malicious prosecution. The latter is but an aggravated form of an action for libel, as in it the libel is sworn to before a magistrate. . . . When, therefore, a man may charge another under oath before a magistrate with a high crime, without responsibility therefor, provided he acts upon probable cause, surely he may upon probable cause charge a candidate for a public office with an act, which if true, would render him an unfit person to receive the suffrages of the people. And if probable cause exists in either case, the question of malice becomes of no importance."

Certainly as to plaintiff Walzer the communication is privileged under the statement of claim.

As to Mr. Cabrey defendant is not protected to the same degree although in the privileged communication about Walzer it would seem to be fair comment to mention a candidate's friends and associates. Men are sometimes known by the company they keep and the voters have a right to know who the associates and friends of a candidate may be. In making such a statement we do not even intimate that Mr. Cabrey is anything but exactly what the defendant calls him in the communi-

cation in paragraph 5, where he speaks of Mr. Cabrey as a public spirited citizen who is sincere in doing what he believes to be the best interests of Narberth.

Defendant's third contention, as to article I, sec. 7, of the Constitution of Pennsylvania, supra, has already been covered in our discussion of defendant's second contention.

Counsel for plaintiffs, in his brief, relies upon the contention that the communication had certain damaging innuendos and that therefore the question of such innuendoes and whether or not they were of a libelous nature should be left to the jury. However, a jury cannot be allowed to pass upon innuendoes that go beyond the plain meaning of the words used: Pittsburgh, Allegheny and Manchester Passenger Railway Co. v. McCurdy, 114 Pa. 554 (1886). In the McCurdy case the company posted a notice that Mr. McCurdy had been discharged for "failing to ring up all fares collected". Certainly to the ordinary person this might be construed as an innuendo that McCurdy had not only failed to ring up the fares but had converted them to his own use. However, the court held that a jury could not go beyond the plain words of the statement itself.

Any person who reads the breach of promise trial of Mr. Pickwick in "Pickwick Papers" sees innuendo carried to its extreme. When the attorney for plaintiff argues to the jury that a statement in Mr. Pickwick's letter to his housekeeper that upon his return he desired to have lamb chops for his supper, was tantamount to a proposal of marriage, we have innuendo carried to an absurdity. If he had notified his housekeeper to have his bed warm plaintiff's lawyer would no doubt have argued to the jury that it was an invitation to plaintiff to occupy the Pickwick bed upon his return.

Here again we must take into consideration the customs and conditions of the particular period. In England at that time bedrooms were unheated and it was the custom to pass bed warmers containing hot embers

between the sheets in order to warm the bed before retiring. Certainly the court in that case would not have been justified in allowing the jury to draw any inference other than that Mr. Pickwick was asking to have his bed warmed in that manner. If the words used in an alleged libelous communication do not sustain the innuendo attributed to them by plaintiff, the case should not be submitted to a jury: Naulty v. Bulletin Co., 206 Pa. 128 (1903).

And now, November 8, 1945, for the reasons given, the demurrer in each of the above cases is sustained and judgment is directed to be entered in favor of defendant in each case.

This opinion is handed down in duplicate, one copy to be filed in each case.

An exception is allowed to each plaintiff.