# Gaither v. The Advertiser Co.

## *Action for Libel.*

1. *Libel; actionable words.*—A publication in a newspaper to the effect that one was discharged from the office of manager of The Farmer's Alliance Exchange "because of the heavy loss in the business of the office," and that the books of such office "when balanced showed a net loss of $2,000, while a branch office," at another place on a much smaller business, "showed a net profit over and above expenses of from $4,000 to $5,000," and that "the showing simply proved" the person about whom the article was published "to be a man of small business capacity," cannot be construed to charge said person with dishonesty in conducting the office.

2. *Same; innuendoes.*—In an action for libel for the publication of such an article, the publication cannot be construed by innuendoes to mean that the plaintiff had been guilty of embezzlement, since the language employed does not authorize such an imputation; and, upon motion made by defendant, the innuendoes should be stricken out of the complaint.

3 *,Same; charge of incompetency in business.*—Such publication is libellous *per se*, as reflecting upon plaintiff's business capacity, and tending to injure the credit and standing of the party about whem it was published, and resulting naturally to his injury in search of business employment.

APPEAL from the City Court of Montgomery.

Tried before the Hon. THOS. M. ARRINGTON.

This was an action of libel; brought by the appellant

against the appellee ; and sought to recover damages for the publication of what was alleged to be libellous matter. All of the facts are sufficiently stated in the opinion.

RICHARDSON & REESE, for appellant, cited *Stallings v. Newman*, 26 Ala. 300 ; *Henderson v. Hale*, 19 Ala. 154 ; *Trimble v. Anderson*, 79 Ala. 514 ; *Iron Age Pub. Co. v. Crudup*, 85 Ala. 519 ; *Adams v. Lawson*, 94 Amer. Dec. 455 ; *Solverson v. Peterson*, 54 Amer. Rep. 607 ; 1 Amer. L. Cases 127 ; 4 Wait's Ac. & Def. 282 ; 13 Amer. & Eng. Encyc. of Law, 411, § 2.

J. M. FALKNER and W. S. THORINGTON, *contra*, cited *Trimble v. Anderson*, 79 Ala. 514 ; *Henderson v. Hale*, 19 Ala. 154 ; *Dowdall v. King*, 97 Ala. 635 ; *Sweeney v. Baker*, 13 West Va. Rep. 158 ; Townsend on Slander and Libel, pp. 435–6, § 247 ; 13 Amer. & Eng. Encyc. of Law, pp. 329, 330, 332, 386, 418, 419, 446 ; 1 Brickell's Dig. 376, § 15.

STONE, C. J.—The publication, charged in the present suit to be libellous, is set out in the several counts of the complaint. Omitting the innuendoes, the part complained of reads as follows : "We don't know. But may be some of the Alliance Leaders can furnish the desired information. Editor Advertiser. Much has been given to the public of late about the shortage of business manager Wynne of the Georgia Alliance Exchange. I have seen a statement to the effect that Wynne's bondsmen will not make the shortage good, because when they went on his bond the high Alliance officials assured them that his accounts were straight with the books, when, as a matter of fact, he was behind with the music then. To a man up a tree, it looks like they have got a 'pretty mess' over in Georgia; but that is Georgia's business, and Georgia will have to look after it. Let us get nearer home. Moreover, I have ascertained from the very best authority that Mr. Gaither was 'fired' from the office of general manager because of a heavy loss in the business of the office. My information is that the Birmingham office, with Mr. Gaither in charge, did a business last year of about $80,000, and the books when balanced showed a net loss of about $2, 000, while

the branch office at Montgomery, on a business of about $25,000, showed a net profit over and above expenses of from $4,000 to $5,000. It seems quite likely that a showing of that sort knocked Mr. Gaither out of office, rather than a third party tendency, which is nothing new or novel to him. The showing simply proved Mr. Gaither to be a man of small business capacity.''

The complaint contains three counts, each setting out the language copied above, and charges that said publication was made by the defendant corporation on August 20, 1891. The first count avers that the publication was ''defamatory,'' and was made by ''defendant, wickedly intending to injure the plaintiff.'' It is also averred in the body of this, the first, count, referring to the Advertiser's said article and its contents, ''that they were false, scandalous, malicious and defamatory.'' The second count charges that the publication was ''falsely and maliciously'' made. The third count contains the charge that the defendant ''wickedly, intending to injure the plaintiff, * * did maliciously publish of and concerning the plaintiff, a certain false, scandalous and defamatory libel, containing, among other things, the false, scandalous and defamatory things,'' which are set out above. Each of the counts contains many innuendoes, the gravest of which is, that the article complained of as libellous charges the plaintiff with embezzlement. The part of the complaint in which this averment is found, quotes from the Advertiser's article, copied above, and inserts in parentheses what it assumes is the meaning. We copy from an averment found in the complaint : ''Moreover, I have ascertained from the very best authority that Mr. Gaither, (meaning the plaintiff) was 'fired' (meaning thereby that the plaintiff was discharged) from the office of general manager, because of a heavy loss in the business of the office, (meaning thereby that plaintiff was guilty of embezzlement as general manager of said Farmer's Alliance Exchange of Alabama.)''

There was a motion in the city court to strike out parts of the complaint, which were inserted in the form of innuendoes, for the alleged reason that they sought to give to the language of the publication a meaning which its terms did not, and could not justify. There was also a demurrer, assigning the same and other grounds. The city court overruled the motion to strike out, but sus-

tained the demurrer to each count of the complaint. There being no amendment of the complaint made or offered, the judgment for defendant was made final, and from that judgment the present appeal is prosecuted. Are the words of the Advertiser's article actionable *per se*? Do they, by their terms, give a right of action?

We are not able to perceive that the language of the Advertiser's article, copied in the opening of this opinion, *per se*, makes, or even insinuates the charge that Mr. Gaither had been guilty of embezzlement, or of any other illegal or immoral act. There is not an intimation that he had been guilty of intentional wrong. All that the words naturally import is, that under Mr. Gaither's management, the Alliance Exchange at Birmingham, in a business of $80,000, had sustained a net loss of about $2,000. The want of success of that office was contrasted with the success of another, in which it is said a handsome net profit was realized. Mark the expressions *net loss, net profit*. The losses exceeded the gains in the one, the gains exceeded the losses in the other. Is a want of business success, or, rather, the imputation of such want, a charge of dishonesty or of immorality? Is every failure to make a profit in business evidence, or does it raise the presumption, of dishonesty? If so, business enterprises are perilous adventures.

But, if the words employed were of such uncertain import as to leave the writer's meaning in doubt, there are expressions in the article, which repel all inference of an intention to impute criminality. "The books when balanced showed a net loss." When books are "balanced," or can be balanced, does it not imply that the assets received are accounted for? Can there be a balancing of the books while assets, or any part of them, remain unaccounted for? The books may fail to show a profit. Bad debts, excessive expenses, and other operating causes may lead to failure in business, while of themselves they do not prove dishonesty. But when the books balance, *prima facie* they show all assets are accounted for.

But a stronger argument is found in the language of the concluding sentence of the article. That language is, that "The showing simply proved Mr. Gaither to be a man of small business capacity." The natural, unaided import of this language was to assail Mr. Gaither's busi-

ness capacity, not his integrity. Of themselves, the words charge no crime.

Is the plaintiff's complaint, in the respect we are considering, made good by the innuendoes? What is the office of the innuendo? "An innuendo may not introduce new matter, or enlarge the natural meaning of words. It must not put upon the defendant's words a construction which they will not bear. It can not alter or extend the sense of the words, or make that certain which is in fact uncertain.          *          *          *

An innuendo can not be proved. And it is for the judge to decide whether a publication is capable of the meaning ascribed to it by an innuendo, and for the jury to decide whether such meaning is truly ascribed to it."—13 Amer. & Eng. Encyc. of Law, 465–7. In other words, the court determines whether the words used are susceptible of the meaning sought to be given to them by the innuendo. If this inquiry is decided by the court against the contention of the pleader, this puts an end to it; for it is not permissible to make proof that the words employed were uttered in the sense, or with the meaning imputed to them in the innuendo. That is not the subject of proof. If it be decided by the court that the words are susceptible of the meaning the innuendo seeks to ascribe to them, then it becomes a question for the jury to determine, under all the circumstances, whether they were intended to mean what the innuendo avers they did.—*Henderson v. Hale*, 19 Ala. 154; *Trimble v. Anderson*, 79 Ala. 514.

We have stated above our interpretation of the language employed. We think it incapable of expressing, or conveying the idea that plaintiff had been guilty of embezzlement. Hence, plaintiff failed to make a case in this aspect of his complaint.

There is another aspect of this case. The publication as shown in the complaint contains this clause: "The showing simply proved Mr. Gaither to be a man of small business capacity."

This had reference to the prior statement that he, Gaither, had conducted a business of about $80,000, and had sustained a loss of about $2,000. It was not a charge of dishonesty, but it charged personal incapacity to conduct a business, such as Mr. Gaither had undertaken. Such publication necessarily, in legal contem-

plation, tends to injure the credit and standing of the party of whom it is published, and leads naturally to his injury in search of business employment. In *Ware v. Clowney*, 24 Ala. 707, this court, in discussing the doctrine of slander, said : "The authorities generally concur in upholding this doctrine in three classes of cases which injuriously reflect upon the trade, profession, or business of an individual, namely :      *      *      3d, where the words impute ignorance, or want of skill and capacity, in general terms." And the following language used by Parker, C. J., in *Ostrom v. Calkins*, 5 Wend. 263, was quoted by our predecessors, apparently without dissent : "Words are actionable which directly tend to the prejudice of any one in his office, profession, trade, or businees, in any lawful employment by which he may gain his livelihood." See also *Sewall v. Catlin*, 3 Wend. 291; *Mott v. Comstock*, 7 Cow. 654 ; *Johnson v. Robertson*, 8 Por. 486.

The above is the rule when one is falsely charged verbally with being incapacitated for the duties of an office, trade or business. For a much stronger reason is an action maintainable when the charge is made public in a written or printed publication. The reason is that printed or written slander is uttered with greater deliberation, is more widely circulated, and is placed in an enduring form. As shedding light on the questions we have been discussing see *Davis v. Lewis*, 7 T. R. 17 ; *Erber v. R. G. Dunn & Co.*, 12 Fed. Rep. 526 ; *McCorkle v. Binns*, 6 Amer. Dec. 420 ; *Stow v. Converse*, 8 Amer. Dec. 189 ; *King v. Root*, 21 Amer. Dec. 102 ; *Lewis v. Hawley*, 2 Day 495 ; *Read v. Hudson*, 1 Ld. Raym. 610 ; *Hall v. Smith*, 1 Maule & Selwyn, 289 ; *Whittington v. Gladwin*, 5 Barnw. & Cress. 180 ; *Jones v. Littler*, 7 Mess. & W. 423 ; *Robinson v. Marchant*, 7 Adolph. & Ellis N. S. 918; *Carpenter v. Dennis*, 3 Sandf., (N. Y.) 305 ; *Phillips v. Hoefer*, 1 Penn. St. 62 ; Cooley on Torts, 205.

We hold that under the authority of *Ware v. Clowney*, 24 Ala. 707, and the principles of the other authorities cited, the publication complained of, in the matter last above referred to, is libellous *per se*, without any averment of specific damage. Of course, the defense provided for under section 2725 of the present Code is open to defendant ; and if it can be shown that the publication as to its averred facts is true, this will be an answer to the action.

[Starke *et al.* v. Bernheim *et al.*]

We have said above that the innuendo, found in each of the counts, that the meaning of the publication was that the plaintiff had been "guilty of embezzlement," was not authorized by the language employed. That innuendo, as expressed, ought to have been stricken out on defendant's motion. In what we have said as to the sufficiency of the third count, we attach no importance to that innuendo, but treat the count as if that averment were not in it.

The third count contains an averment of special damage. The burden of proving that averment rests on the plaintiff; and if the truth of the publication be shown, it will be an answer alike to the general and special damages claimed.

Reversed and remanded.