[Advertiser Company v. Jones.]

# Advertiser Company *v.* Jones.

## *Libel.*

(Decided July 6, 1910.   Rehearing denied Dec. 22, 1910.
53 South. 759.)

1. *Appeal and Error; Right to Complain; Elimination of Counts.*—A defendant cannot on appeal complain of the action of the plaintiff or the trial court in eliminating counts from the complaint.

2. *Same; Harmless Error; Instructions.*—Where under all the evidence in the case, the plaintiff was entitled to the general charge as for nominal damages, error in any other matters other than the measure of damages recoverable is harmless.

3. *Same.*—Where the demand for retraction of a libel complied with the statute, and the complaint was amended by adding appropriate allegations as to it, the defendant was not prejudiced by any rulings in regard thereto.

4. *Same; Questions Reviewable; Record.*—Where a refused charge was assigned as error on the record, and in brief of counsel, and the charge was set out and every point or proposition of law involved in it, was discussed in the brief, the correctness of the charge was sufficiently raised to require consideration thereof on appeal.

5. *Libel and Slander; Publication; Libelous per se.*—A newspaper article falsely charging that a city official sold city gravel, had the same loaded into city wagons by city convicts and hauled to the buyer by city teams where it was laid by city employees, and that the officer collected the money therefor for his own use, was libelous per se implying corruption on the part of the city official.

6. *Same.*—A false charge against a public official imputing want of integrity or corruption in the discharge of his official duties is libelous per se.

7. *Same; Complaint.*—In an action for libel, a complaint which is in code form alleging a newspaper publication libelous per se is good against demurrer and need not allege special damages.

8. *Same; Evidence.*—The general issue to an action of libel puts in issue only the fact of the publication of the matter as alleged and where the proof conclusively shows publication plaintiff becomes entitled to the general affirmative charge as for nominal damages.

9. *Same; Mitigation of Damages.*—Evidence of the truth of a libelous publication is admissible under the general issue in mitigation of damages, but not in bar of the right of recovery.

10. *Same; Damages.*—Injury is presumed where a false and non-privileged publication, libelous in itself, is shown and justifies at least nominal damages.

11. *Same.*—The amount of damages to be awarded for a libel per se is within the sound discretion of the jury under proper instructions from the court.

12. *Same; Malice; Implied Malice.*—The publisher of an article which if false, is libelous per se, is under duty to know of its truth or falsity before publication, and malice may be inferred from the mere failure to discover the fact before publication, and a charge asserting that malice means a conscious disregard of the truth or falsity of the publication, on the part of the defendant, was erroneous.

13. *Same.*—One suing for libel per se is not under the necessity of proving actual malice.

14. *Same; Instructions.*—A charge asserting that the jury finding that the article complained of was false might look to all the facts in connection with the publication and the conduct of the parties in connection therewith, and what subsequently transpired in relation thereto, as shown from the evidence, in mitigation of damages was calculated to impress the jury that such facts were in mitigation of damages, and was hence, properly refused.

15. *Same.*—Where the complaint did not allege special damages and the general issue was the only plea, a charge asserting that though the article was false, yet if the jury believe reasonably that it was published in good faith, that its falsity were either mistake or misapprehension and that a full retraction was published within five days after service of demand to do so, the jury might in their discretion return a verdict for nominal damages only, was proper and should have been given.

16. *Evidence; Parts of Conversation.*—A statement forming a part of a conversation, portions of which have been called out by both parties, is properly received in evidence.

17. *Same; Best Evidence.*—Where a statement has been reduced to writing, the best evidence is the writing itself, and oral testimony thereof is not admissible.

APPEAL from Montgomery City Court.

Heard before Hon. A. D. SAYRE.

Action by Campbell Jones against the Advertiser Company for libel. From a judgment for plaintiff for $5,000, defendant appeals. Reversed and remanded.

The pleadings and the facts sufficiently appear in the opinion of the court. The following charges were refused to the defendant: (4) "Implied malice, as that term is used in connection with this transaction, means a conscious disregard of the truth or falsity of the publication on the part of the defendant, or those responsible for the publication, at or before the publication was

[Advertiser Company v. Jones.]

made." (7) "If the jury believe from the evidence that the publication of the article alleged to be libelous did not proceed from motives of actual malice on the part of the defendant or his representative, and if they further believe from the evidence that the publication was not made under such circumstances and conditions as that the law would imply malice, then it cannot be said that the plaintiff has made out its case as alleged in the complaint, and in that event you should return a verdict in this case in favor of the defendant." (8) "The court charges the jury that, even though you may find that the article complained of was falsely published, yet you have a right to look at all the facts and circumstances in connection with the publication of the article, and the conduct of the parties in connection therewith, and what subsequently transpired in relation thereto, as shown from the evidence, in mitigation of damages." (9) "If the jury believe from the evidence in this case that the publication of the article alleged to be libelous did not proceed from motives backed by malice on the part of those responsible for its publication, and if they further believe from the evidence that the publication was not attended with such conditions as that the law would imply malice, as those conditions have been defined to you by the court, then they must find for the defendant." (12) "Although you may believe from the evidence that the article complained of was false, yet if you are reasonably satisfied from the evidence that it was published in good faith, that its falsity was due to mistake or misapprehension, and that a full correction and retraction of such false statement was published within five days in the Montgomery Advertiser after the service of notice or demand upon it to do so, in as conspicuous a place and type as the original article was published, then, although you may find

[Advertiser Company v. Jones.]

that the plaintiff was entitled to recover, you may, in your discretion, return a verdict for only nominal damages."

STEINER, CRUM & WEIL, and A. A. WILEY, for appellant. Counsel discuss the assignments of error seriatim, and conclude that while the article was libelous per se, yet, there was not the slightest evidence that plaintiff suffered any actual or pecuniary damage or that he sustained any damage to his character or reputation, and hence, the verdict was excessive and should have been set aside.—*White v. Blair,* 95 Ala. 148; *A. G. S. v. Burgess,* 119 Ala. 555. Counsel further call attention to the following cases relative to the general subject of privileged communication.—31 Am. Rep. 698; 2 Am. St. Rep. 870; 56 Am. St. Rep. 170. Counsel further insist that the court erred in refusing the charges requested.

S. H. DENT, LEE H. WEIL, and HILL, HILL & WHITING, for appellee. Counsel discuss the assignments of error relative to evidence and rulings on the pleadings, but without citation of authority. They insist that charge 4 was properly refused.—*R. R. Co. v. Webber,* 97 Ala. 157; *Bomar v. Watson,* 71 Ala. 299; *Hughes v. Anderson,* 68 Ala. 280; *Knowles v. Ogletree,* 96 Ala. 555; *Nat. Sur. Co. v. Mabry,* 139 Ala. 217; 3 Pick. 379; 18 A. & E. Enc. of Law, p. 1000. Charge 9 was properly refused.—*Miller v. The State,* 107 Ala. 40; *Smith v. Collins,* 94 Ala. 394; *K. C. M. & B. v. Webb,* 97 Ala. 157. The damages to be assessed were within the sound discretion of the jury, and hence, the court will not set aside the verdict on that account.—*Johnson v. Robinson,* 8 Port. 486; *Harris v. Purdie,* 1 Stew. 131; *Poole v. Deevers,* 30 Ala. 673.

[Advertiser Company v. Jones.]

MAYFIELD, J.—This action is for libel. The complaint at one time contained a great number of counts. All except counts 7 and 8 were eliminated, of which appellant cannot complain, because of no possible injury to it. The remaining counts, 7 and 8, were both in Code form, and declared on the same publication. Count 7 declared on only a part of the publication, while count 8 set out the publication in extenso. The alleged publication contained, among other matters, the following, as headlines:

"Will File Grave Charges Against a City Official.

"Street Superintendent Accused of Misconduct.

"Jones Sold City's Gravel."

Then follows an editorial or synopsis of Brown's charges, a part of which is as follows: "Briefly stated, Mr. Brown charges that Mr. Jones sold the city's gravel to the Country Club, had the gravel loaded into the city's wagons by city convicts and hauled to the clubhouse by city teams, where it was laid by negro employees of the city, thereby competing with him, Mr. Brown, as a grading contractor, and that Mr. Jones collected the money impliedly for his own use." Then followed the statement by or interview with Mr. Brown, which is too long to be here set out. Each of these counts declared upon the above, among other things indicated, as a libelous publication in the defendant's daily newspaper of the 20th day of March, 1905, which publication is alleged and shown to have a large circulation in the city and county of Montgomery, in which city plaintiff lived, and of which he was an officer; all of which was alleged, and by the jury found, to be, to plaintiff's great damage in the sum of $5,000. This publication, if false as it is alleged to be, was, under

all the authorities, per se libelous. See *Gaither v. Advertiser Co.*, 102 Ala. 458, 14 South. 788; *Iron Age Pub. Co. v. Crudup*, 85 Ala. 519, 5 South. 332; *Wofford v. Meeks*, 129 Ala. 358, 30 South. 625, 55 L. R. A. 214; *Hereford v. Combs*, 126 Ala. 369, 28 South. 582—which cite many other cases in this state. See, also, *Dauphiny v. Buhne*, 153 Cal. 757, 96 Pac. 880, 126 Am. St. Rep. 136, a case in which the facts are very similar to those in the case at bar, in which the court spoke as follows: "A charge against a public official imputing want of integrity or corruption in the discharge of his official duties is actionable of itself."

This court, speaking through Stone, C. J., in the case of *Gaither v. Advertiser Co.*, 102 Ala. 461, 14 South. 789, quoted from a New York case as follows: "Words are actionable which directly tend to the prejudice of any one in his office, profession, trade, or business, in any lawful employment by which he may gain a livelihood"—and then added: "The above is the rule when one is falsely charged verbally with being incapacitated for the duties of an office, trade, or business. For a much stronger reason is an action maintainable when the charge is made public in a written or printed publication. The reason is that printed or written slander is uttered with greater deliberation, is more widely circulated, and is placed in an enduring form." There can be no doubt that the natural and unaided import of the publication complained of in this case was to assail the integrity of, and to imply corruption on the part of, plaintiff, both as a public officer and as an individual. We can see no escape from this conclusion. The language used in this case is more severe and objectionable than were the words employed in many of the cases above cited, which were held to be actionable per se. The language held to be such in *Gaither's Case*, above,

was much less severe or objectionable. It was as follows: "The showing simply proved Mr. Gaither to be a man of small business capacity." True, this was held not to assail Gaither's integrity, but to charge personal incapacity, which was held to be actionable per se, and therefore not to require any allegation as to special damages to support the action.

Each count was subsequently amended by allegations as to a demand by plaintiff upon defendant for a retraction of the publication, in view of the recent statute of this state upon the subject of retractions of libel. Each count being in Code form, and in compliance with the statute, and the alleged libel being such per se, it follows that each count stated a good cause of action and was not demurrable; and that no allegation was necessary as to special damages. The cause was tried upon the general issue alone, as to those two counts (7 and 8). No special pleas of justification—that is, alleging the truth of the matter published or that the publication was a privileged one—appear to have been offered or filed. The general issue in such case only puts in issue the fact of publication of the matter as alleged. The proof conclusively showed that the article was published as alleged—in fact, this was not denied, except formally by this plea, but was on the trial admitted and conceded by defendant. This being true, the plaintiff was of course entitled to the general affirmative charge as for nominal damages. Therefore, the only question for the determination of the jury, under the issues and the proof, was the amount of damages.

While evidence tending to prove the truth of the matter published, and that the publication was privileged, was admissible under the general issue alone upon which it was tried, such evidence was only admissible for the purpose of mitigating the damages, and not in

bar of the right of recovery. In the recent case of
*Ferdon v. Dickens,* 161 Ala. 181, 49 South. 893, we re-
viewed at some length our constitutional, statutory,
and code provisions, together with the former decisions
of this court, as to pleadings and proof in civil suits
for libel and slander, and therein announced the follow-
ing conclusions: "We hold that a special plea in an ac-
tion of libel or slander, which alleges or sets up a state
of facts showing that the alleged slander or libel was
privileged, would be a complete defense; but under our
statutes, this, as well as a plea of justification alleging
the truth of the charge or publication, if intended as a
bar or a complete defense, and not simply one in mitiga-
tion of damages, should be specially pleaded, and it
should set forth facts sufficient to show that the publi-
cation or charge was made on a privileged occasion or
under circumstances and conditions which made it priv-
ileged in law, with a denial that it was published with
malice, unless it be a case where the words are abso-
lutely privileged. This plea is in the nature of a plea
in confession and avoidance. It is essential that a spe-
cial plea in libel and slander, in order to constitute a
complete defense, should answer the whole ground of
action relied upon in the complaint.—25 Cyc. 456-458.
At common law the defendant could not plead several
defenses to the same part of the declaration, nor to the
same entire declaration. This was changed by the stat-
ute of 4 Anne, so that the defendant could plead as
many special matters as he thought necessary for his
defense, provided he could obtain leave of the court—
that is to say, by the statute of Anne it was discretion-
ary with trial courts of record to permit or to deny such
pleas.—1 Chitty's Pleadings, p. 341. By our statutes
as originally enacted (see Clay's Digest, p. 332, § 109),
the defendant could, as matter of right under the stat-

ute, plead as many pleas as he thought proper, and do so without leave of the court.—*Pope v. Walsh's Adm'r,* 18 Ala. 631. Each plea must stand or fall by itself. Each plea, no matter how many are filed, is as disconnected from the others as if on a separate record, and one plea cannot be admitted on the trial to prove or disprove another plea. The issues on each must be entirely distinct and must be tried accordingly; notwithstanding they may be inconsistent with and contradictory of each other, one cannot be used to prove or disprove the other.—*Pope v. Welsh's Adm'r,* 18 Ala. 631. Collier, C. J., in *Scott v. McKinnish,* 15 Ala. 662, says: 'Under the plea of not guilty, in an action of slander or libel, the defendant may prove in mitigation of damages anything short of a justification which does not necessarily imply or tend to prove the truth of the words charged; but he cannot be permitted to prove facts and circumstances which conduce to establish the truth, or which form a link in the evidence to make out a justification.' Again, it was held in *Williams v. Cawley,* 18 Ala. 206, that in actions of slander and libel the defendant may prove the facts and circumstances in reference to which the words were written or spoken, for the purpose of showing that he did not intend by the use of them to impute to the plaintiff the crime, which, standing alone, they would naturally import. In *Pope v. Welsh's Adm'r,* 18 Ala. 631, it was held that in an action of slander the general bad character of the plaintiff may be given in evidence, under the general issue, in mitigation of damages, notwithstanding the defendant may have also interposed a plea of justification.— *Fuller v. Dean,* 31 Ala. 654." See, also, *Warner v. Clark,* 45 La. Ann. 863, 13 South. 203, 21 L. R. A. 502; *Rutherford v. Paddock,* 180 Mass. 289, 62 N. E. 381, 91 Am. St. Rep. 285, and cases cited in notes thereto.

So it follows that we cannot review on this appeal any of those questions, assigned as error, which go to the right of plaintiff to recover because not properly raised in the lower court; and for the reason that under all the evidence, and under that of defendant alone, when applied alone to the plea of not guilty (which was the only issue in the case), the plaintiff was entitled to the general affirmative charge, at least for nominal damages.—*Paxton v. Woodward,* 31 Mont. 195, 78 Pac. 215, 107 Am. St. Rep. 416; *Tracy v. Hackett,* 19 Ind. App. 133, 49 N. E. 185 65 Am. St. Rep. 398.

The confessed publication in this case undoubtedly imputed to plaintiff want of official integrity; its natural tendency was to injure his reputation and to expose him to public contempt, and it was therefore libelous per se. In such cases the law presumes general damages as a natural and probable consequence.—Authorities supra; and see, also, *Upton v. Hume,* 24 Or. 420, 33 Pac. 810, 21 L. R. A. 493, 41 Am. St. Rep. 863. The authorities appear to be uniform to the conclusion that, when a false and nonprivileged publication, which is per se libelous, is established, injury is presumed to ensue therefrom as the direct product of the publication, and affords ground for the allowance of at least nominal damages. So the only assignments other than the demurrers to the complaint, which have been herein disposed of, are those assignments which go to the measure or quantity of damages recovered. Whatever error, if any, which may have intervened as to other matters, was necessarily without possible injury or detriment to the defendant, appellant here. As to the measure of such damages, there is no legal standard. The amount thereof, under proper instructions from the court, is usually referred to the sound discretion of the jury. If the publication is actionable per se, and is

proven, the legal presumption of damages goes to the jury, and they, in view of the particular circumstances of the case, are required, in the exercise of their sound judgment, to determine what sum will afford reparation.—3 Sutherland on Damages, 643-647.

In actions of this kind these and other questions are peculiarly questions for the jury, which might be for the court in other cases. This results from the constitutional and statutory provisions of the various states, as to such prosecutions and civil actions. These provisions of law, whether civil or criminal, are the outgrowth of the famous "Fox Libel Act," adopted by the English Parliament in 1792, officially published in 32 Geo. III, c. 60. This act, as is well known, was rendered possible by the burning eloquence of Lord Erskine. Lord Campbell spoke of it as follows: "I have said, and I still think that this great constitutional triumph is mainly to be ascribed to Lord Campden who has been fighting in the cause for half a century, and uttered his last words in the House of Lords in its support; but had he not received the invaluable assistance of Erskine as counsel for the Dean of St. Asaph, the Star Chamber might have been reestablished in this country." Modified provisions of this famous act have found their way into many if not all of the Constitutions and statutes of the states. They appear in our Constitution as section 12 of the Bill of Rights, and in the Code of 1907 as section 3745 thereof; and read as follows:

"Sec. 12 (Bill of Rights). That in all prosecutions for libel or for the publication of papers investigating the official conduct of officers or men in public capacity, or when the matter published is proper for public information, the truth thereof may be given in evidence; and that in all indictments for libel, the jury shall have

[Advertiser Company v. Jones.]

the right to determine the law and the facts under the direction of the court."

"3745 (Code of 1907). * * * In civil actions for the publication of papers, investigating the official conduct of officers or men in public capacity, or when the matter published is proper for public information, . the truth thereof may be given in evidence."

The Supreme Court of Montana spoke and quoted of these provisions as follows: "* * * There exists great contrariety of opinion as to the extent of power conferred upon the jury, independently of the court, to determine the law and the facts and judge of the whole case. A review of the cases relating to this subject can serve no useful purpose here, as the questions whether the jury is required to accept the instructions of the court as conclusive, and what power resides in this court to review a case where the instructions and other procedure of the trial court are free from error, are questions not involved in this case. Whatever view is adopted, the courts are almost, if not quite, a unit upon the proposition that it is the duty of the judge to decide upon the sufficiency of the pleadings, the admissibility of testimony, instruct the jury, and discharge the other functions devolving upon him down to the final submission of the cause to the jury, as in other cases. In Missouri, where the doctrine prevails that the jury may disregard the instructions, it is said in *State v. Armstrong*, 106 Mo. 395 (16 S. W. 604, 13 L. R. A. 419), 27 Am. St. Rep. 361, that: 'While the judge may assist and inform them what the law is, and it is his duty to do so, still they are, by virtue of organic law, the final judges in a prosecution for criminal libel.' In *Drake v. State*, 53 N. J. Law, 23, 20 Atl. 747, Justice Dixon, construing a similar constitutional provision, says: 'It was not intended to affect the duty of the court to de-

cide all questions of law relating to the admission of testimony and such other matters as are preliminary to the final submission of the case to the jury; nor to affect its duty to instruct the jury with regard to their legitimate province in the decision of the cause, and with regard to those general principles of the criminal law and of the law of libel which are of a technical nature, and with which the jury scarcely become acquainted, save through the instructions of the court. None of these matters were ever subject to doubt in prosecutions for libel, nor did they bring about any of the legislation either in England or in this country.'" —*Paxton v. Woodward*, 31 Mont. 217, 78 Pac. 220, 107 Am. St. Rep. 427, 428.

The demand for retraction in this case was in all respects a compliance with the statute, and, as before stated, the complaint was amended by adding appropriate allegations as to it. No possible injury was done defendant in respect to any of the rulings in regard thereto.

Charge 4 was improper. Malice might have been implied in this case, though there was no "conscious" disregard of the truth or falsity of the publication. This was not at all necessary. It is the duty of a party publishing such a statement as the one in question to know of its truth or falsity before publishing it; and malice may be inferred from the mere failure to discover, before publishing.

Charge 7 was bad for the same reason. "Actual malice" in the publication was not necessary to a recovery in this case, and, further, because the plaintiff was, as has been before stated, entitled to a verdict for at least nominal damages under the evidence.

Charge 8 was properly refused, as tending to mislead the jury. While the jury had the undoubted right to

[Advertiser Company v. Jones.]

look to all the facts and all the circumstances attending the publication, and to the conduct of the parties in connection therewith, as well as to what subsequently transpired in relation thereto as shown by the evidence, in determining what damages they would award, and they might find or consider them to be in mitigation of damages, yet this charge was calculated to impress the jury that such facts and circumstances were in mitigation of damages. While the charge is certain that it means this, it is calculated to mislead, and for that reason was properly refused.

Charge 9 was bad for the same reasons assigned to charges 4 and 7, above.

Charge 12 was bad as tending to mislead and confuse the jury, and improperly precluded the recovery of actual damages, which were certainly recoverable under all the hypotheses stated

While the damages are large in this case we cannot say that they were excessive. There was evidence from which the jury might infer malice, and upon which they might award punitive damages. This being true, neither the law nor the evidence furnishes us any standard by which we can ascertain certainly that they were excessive. The trial court heard all of this evidence, saw the witnesses, observed their expression and demeanor, and hence was in a better position to judge of the extent of punishment which the evidence warranted than are we, who must form our conclusions upon the mere narrative of the transcript. This court, in treating of excessive verdicts in cases in which punitive damages could be awarded, through Justice Haralson spoke and quoted as follows: "There is no legal measure of damages in cases of this character. That a jury are authorized to award exemplary or punitive damages, when a wrongful act is done wilfully, in a wanton or oppressive

14—109

manner, or even when it is done recklessly, or in open
disregard of one's civil obligations and of the rights of
others, is not denied.—*Fotheringham v. Adams' Ex. Co.*
[(C. C.) 36 Fed. 252], 1 L. R. A. 474, and authorities
there cited. Nor can it be questioned, that when the
damages allowed are so excessive as to warrant the be-
lief that the jury must have been misled by some mis-
taken view of the merits of the case, the court may in-
terfere and set it aside.—Sedgwick on Measure of
Damages (7th Ed.) 655, note 'a,' as to excessive dam-
ages. On the subject of motion for a new trial for ex-
cessive damages, Mr. Newell in his work on Malicious
Prosecutions, adopts approvingly what was said on the
subject by Lord Mansfield, in the case of *Gilbert v. Bur-
tenshaw,* Cowper, 230: 'I should be sorry to say that in
cases of personal torts no new trial should ever be
granted for damages which manifestly show the jury to
have been actuated by passion, partiality, or prejudice.
But it is not to be done without very strong grounds, in-
deed, and such as carry internal evidence of intemper-
ance in the minds of the jury. It is by no means to be
done when the court may feel that, if they had been on
the jury, they would have given less damages, or where
they might think the jury themselves would have com-
pletely discharged their duty in giving a less sum. Of
all the cases left to the jury, none is more emphatically
left to their sound discretion than such a case as this,
and, unless it appears that the damages are flagrantly
outrageous and extravagant, it is difficult for the court
to draw the line.' He also quotes what Justice Story
said on the same subject—that the verdict should not
be set aside for excessive damages, in cases of tort, 'un-
less the court can clearly see that the jury have com-
mitted some very gross and palpable error, or have act-
ed under some improper bias, influence, or prejudice,

or have totally mistaken the rules of law by which the damages are to be regulated.'—*Whipple v. Manufacturing Company,* 2 Story, 661 (Fed. Cas. No. 17,516)"; *National Surety Co. v. Mabry,* 139 Ala. 224, 225, 35 South. 701.

Large verdicts—some much larger than that in this case—have been sustained by other courts, in the following cases, and they are authority for the action of the lower court in declining to set aside the verdict in this case because excessive: *Russell v. Bradley* (C. C.) 50 Fed. 515; *Wilson's Case,* 63 Ill. 167; *Alliger v. Brooklyn Daily Eagle,* 53 Hun, 633, 6 N. Y. Supp. 110; Id., 127 N. Y. 651, 27 N. E. 856; *Stafford v. Morning Journal Ass'n,* 68 Hun, 467, 22 N. Y. Supp. 1008; *Smith v. The Times Company* (Com. Pl.) 4 Pa. Dist. R. 399; *Sweeney v. Baker,* 13 W. Va. 158, 31 Am. Rep. 757; *Ogden v. Gibbons,* 5 N. J. Law, 518.

There was no reversible error in declining to exclude the statement by plaintiff (that Mr. Hood, of the Journal, was a gentleman). No ground was assigned for the objection or motion to exclude. It was a part of a conversation, portions of which had been called out by both parties.

Nor was there any error in declining to allow the witness Kennedy to testify as to the statement of Brown, as requested and insisted by defendant. It was shown that this statement was in writing, and it was the best evidence of the facts, and the court did not offer to allow defendant to prove by this witness exactly what Brown did say. The questions certainly were leading, and could have been refused for that reason.

However, Chief Justice Dowdell and Justices Anderson, McClellan, and Evans concur in the reversal of this case for the refusal of charge 12 requested by the defendant. They think that the charge hypothesizes all

damages which the plaintiff was entitled to recover un-der the complaint as submitted to the jury; that it merely seeks to eliminate all damages not covered by the complaint, and to exclude actual or compensatory damages. The counts submitted to the jury (7 and 8) were in Code form, and contained no claim for actual or compensatory damages, and under which counts the plaintiff was only entitled to recover nominal and puni-tive damages.—*Sloss-Sheffield Co. v. Dickinson,* 167 Ala. 211, 52 South. 594; *Irby v. Wilde,* 150 Ala. 402, 43 South. 574; *Powell v. Schimpf* (reported as mem.) 154 Ala. 665, 44 South. 1044. See opinion in 167 Ala. 211, 52 South. 594.

The writer is of the opinion that these counts, being in Code form, necessarily authorized a recovery for all actual damages, the natural and proximate result of the wrongs and injuries complained of. The question as to whether such damages are recoverable in this case, as well as that of nominal and punitive damages, was for the determination of the jury.

Reversed and remanded.

## In Response to Application for a Rehearing.

It is urged by counsel for appellee on this rehearing that the sole question upon which this case was revers-ed, viz., the refusal to give defendant's requested charge No. 12, was not insisted upon by counsel for appellant in their original brief. While this question was not considered by the whole court on the original hearing, it was by the writer of the opinion, and he thought, and still thinks, that there was a sufficient insistence on that point to merit its treatment and consideration. On this application the question is considered by all the Justices who took part in this decision, and they concur

with the writer that there was a sufficient insistence as to this charge. While it is true, as contended by appellee, that there was no argument in brief addressed particularly to this specific charge, as in the case of other charges, yet the refusal of the charge is assigned on the record, and is also assigned as error in brief of counsel, and the charge is set out in haec verba. Moreover, every proposition of law involved in the charge is discussed in appellant's brief, and likewise the phases of the evidence to which it was applicable were discussed—which distinguishes this case from the cases cited by counsel for appellee in their brief for a rehearing in this case.

The writer is still of the opinion that charge 12 was properly refused for the reason that it denied a recovery for actual damages, such as for wounded feelings, mental pain, and anguish; but in this view his Brothers do not concur.

The application for a rehearing is overruled.