[Comer v. The Advertiser Co., et al.]

# Comer *v.* The Advertiser Co., *et al.*

## *Libel and Slander.*

(Decided April 3, 1911.   Rehearing denied May 5, 1911.
55 South. 195.)

1. *Libel and Slander; Evidence.*—Where the action was for libel of a candidate for public office by a newspaper, evidence of the circumstances under which the publication was made, and of the fact that the columns of the newspaper were open to each candidate by paying for articles as advertisements, was admissible as a part of .the circumstances proper to go to the jury.

2. *Same.*—Where the action was against the newspaper for libel, facts as to a co-defendant's being instrumental in procuring an affidavit charging the candidate with misconduct, and having the same published in newspapers, and that the affidavit was sent from co-defendant's office, and that it appeared in the columns of his co-defendant newspaper the following day, were proper on the issue whether one of the defendants furnished the affidavit for the purpose of having it published in the newspaper.

3. *Same.*—Where there was prima facie evidence of a conspiracy on the part of two defendants to produce and use an affidavit of a third person in a political campaign, and to give it as much publicity as possible, the fact that one or both caused the affidavit to be published in the newspaper was admissible to show a conspiracy and to show that the affidavit was received through their agency by a co-defendant newspaper publishing the libellous article.

4. *Same; Damages; Mitigation.*—Under section 13, Constitution 1901, one who is liable is entitled to the damages proximately and necessarily resulting from the libellous publication, and the circumstances attending such publication, such as publishing the libel in good faith as a matter of news that it was true, and as information to the public as to plaintiff who was then a candidate for office, can be considered only in determining whether actual damages had been sustained, and the extent thereof, and not to reduce or mitigate those actually sustained.

5. *Same; Instructions.*—The fact that the plaintiff took issue on a plea in bar setting up the fact that the defendant, in making the publication, relied on the sworn statement of a third person, and made the publication ·in good faith, would not justify a charge that the jury might consider, in mitigation of damages, a fact that the defendant acted in good faith.

6. *Constitutional Law; Remedy; Injury to Reputation.*—The provisions of section 3746, Code 1907, do not take away the right guaranteed by section 13, Constitution 1901, since its provisions apply only to cases where facts may mitigate damages and obviate the necessity of special plea.

7. *Appeal and Error; Harmless Error; Evidence.*—Where a fact is shown by a party complaining of its admission in evidence, and by testimony of witnesses received without objection, any error in overruling objections to said testimony is rendered harmless.

(Simpson and Mayfield dissent in part.)

APPEAL from Birmingham City Court.

Heard before Hon. CHAS. A. SENN.

Action by B. B. Comer against the Advertiser Company and others. From a judgment granting insufficient relief, plaintiff appeals. Reversed and remanded.

The complaint was as follows:

"Count 1. Plaintiff claims of defendant $25,000 damages for falsely and maliciously publishing of and concerning him in a newspaper published in Montgomery, Alabama, called the Montgomery Advertiser, the following matter with intent to defame the plaintiff, viz.: 'Methods of Comer as a "Business" Man. Damaging Affidavit Made by E. A. Dickert, of Birmingham, a First Cousin of the Radical Candidate. (Communicated.) An affidavit received yesterday from E. A. Dickert, a prominent citizen of Birmingham and a first cousin of Hon. B. B. Comer, rather tends to show that this gentleman is hardly the proper man to sit in a judicial capacity as an unbiased judge. Just read and consider for yourself. "State of Alabama, Jefferson County. Before me, the undersigned, a notary public in and for the said county and state, personally appeared E. A. Dickert, who, being duly sworn, says that he is acquainted with and is a first cousin of Mr. B. B. Comer, of Birmingham, Ala., and that in the month of October, 1900, he was section foreman for the Louisville & Nashville Railroad Company, in the city of Birmingham, Ala., and as such made certain repairs to the railroad tracks belonging to the Avondale Cotton Mills Company, Avondale, Ala., which repairs, according to contract, were to be charged by the railroad com-

pany against the said Avondale Cotton Mills Company, in the amount reported by affiant to the Railroad company. Affiant further says that upon completion of the work upon the Avondale Cotton Mills Company's track he was approached by Mr. B., B. Comer, president of said mill company, and that said B. B. Comer inquired of him the approximate total amount of said repairs. Affiant further states that he informed Mr. Comer that the approximate amount of said repairs would be $30, and that thereupon said B. B. Comer requested him to come into his private office, and stated to affiant that he would there pay to him in cash the approximate amount for making the repairs as stated above, instead of the Louisville & Nashville Railroad Company. Affiant further states that he told Mr. B. B. Comer that he could not do business in this manner, and that said B. B. Comer would have to pay the money to the Louisville & Nashville Railroad Company. Affiant further states that B. B. Comer replied to him that if affiant proposed to do business in this manner that he (the affiant) would die a poor man. Affiant further states that he replied to Mr. B. B. Comer that under those circumstances he would die a poor man, as he would not get money in this manner. [Signed] E. A. Dickert. Sworn to and subscribed before me this 9th day of April, 1904. Marie E. Jones, N. P. [Seal]"'—on the 10th day of April, 1904.

"Count 2. Plaintiff claims of defendant the further sum of $25,000 as damages, for that plaintiff was on, to wit, the 10th day of April, 1904, a candidate for the Democratic nomination for the office of president of the Railroad Commission of Alabama, in a primary election then about to be held on the 12th day of April, 1904, and the defendant did falsely and maliciously, and with intent to defame the plaintiff, and for the purpose of

showing that the plaintiff was unfit for said office, and to induce electors not to cast their votes for plaintiff at said election, publish on the 10th day of April, 1904, of and concerning him in a circulating newspaper, called the Montgomery Advertiser, the matter set forth in the original count of the complaint, meaning by said matter to impute to the plaintiff a want of personal integrity, and to induce the electors in said election to believe him unfit for said office, meaning by said publication to charge the plaintiff with the dishonest act of having advised and counseled and having abetted an employee of the Louisville & Nashville Railroad Company to defraud said railroad company, by collecting for his own use and benefit money belonging to said railroad company, and concealing the fact that said money was due his said employer, the Louisville & Nashville Railroad Company, and meaning further to charge the plaintiff with having offered to aid and abet the said employee in the perpetration of a fraud on his employer, whereby, the plaintiff was greatly damaged, by being held up before the public as a dishonest man, his feelings were hurt and injured, and he was subject to public mortification, and he suffered loss to his reputation or good name, all in the sum of $25,000, for which plaintiff sues, and which he claims as and for compensatory damages; the plaintiff not including in his claim and not suing for punitive damages, but seeks to recover under this count compensatory damages, including such presumptive damages as the law may presume he has sustained for injury to his reputation for and on account of the wrongful acts of the defendants."

The agreement noted is as follows: "The plaintiff, by leave of the court first had and obtained, amends his complaint filed herein in the manner following, to-wit: (1) By adding at the end of the original complaint,

containing one count, the following averments: 'And plaintiff avers that at the time of said publication he was a candidate for the Democratic nomination for the office of president of the Railroad Commission of Alabama, then about to be holden, on, to wit, April 11, 1904, throughout the state of Alabama, and that said publication was made concerning him and his candidacy. But the plaintiff does not claim from the defendant any sum for and on account of punitive or exemplary damages, but seeks to recover under this complaint only compensatory damages, including such presumptive damages as the law may presume he may have sustained for injury to his reputation for and on account of the wrongful act of the defendant in publishing said article.'

"Agreement of counsel: It is agreed that this may be treated as a return to the certiorari, and that the foregoing amendment be made a part of the record; and it is further agreed that the cause was tried in the court below as one for compensatory damages, with a waiver by plaintiff of punitive damages signed by counsel."

Charge 2 is as follows: "If the jury believe from the evidence that the article complained of was published or caused to be published by the defendant the Advertiser Company in good faith, with the honest belief that it was true, and relying on the represestation made to it by a reputable citizen and elector, known by it to be such, and for the sole purpose of advising and informing the electors of Alabama of the fitness and qualification of the plaintiff for the office he was then seeking at their hands when said article was published, and without express malice, the jury may consider such fact in mitigation of plaintiff's damages, if they find for him."

SAM'L D. WEAKLEY, E. H. CABANISS and FRANK S. WHITE & SONS, for appellant. Remembering that this was an action for compensatory damages, and that exemplary damages have been expressly waived, the court was in error in giving charge 2 at the request of the defendants.—Section 13, Constitution 1901; *Hanson v. Kreabiel,* 64 L. R. A. 790; *Park v. Detroit Free Press,* 16 Am. St. Rep. 544; *McKee v. Baumgartner,* 121 Mich. 287; 25 Cyc. 532; 81 Ill. 77; 66 S. W. 981; 26 S. W. 1020; 15 Nev. 195; 96 Wis. 34. Having given this charge, the court should have given an explanatory charge thereof requested by the plaintiff.—*Lee v. Crump,* 146 Ala. 655. The court erred in admitting the evidence of Mr. Hanson.—Sec. 3746, Code 1907. The court erred in giving the affirmative charge for the co-defendants of the Advertiser Company as under the facts in this case, they were just as liable as the Advertiser Company.—23 Col. 556; 6 Houst. 181; 162 N. Y. 12; 11 S. W. 1058; 53 L. R. A. 235; 1 H. & N. 1; 47 Am. Rep. 312. The damages were inadequate.

TILLMAN, BRADLEY & MORROW, A. G. & E. D. SMITH, and STEINER, CRUM & WEIL, for appellee. The court was not in error in giving charge 2 for the Advertiser Company.—*Kennedy v. Dear,* 6 Port. 90; *Arrington v. Jones,* 9 Port. 139; 18 Ala. 206; *Fuller v. Dean,* 31 Ala. 654; 20 Ala. 428; 32 Ala. 628; *Ferdon v. Dickins,* 161 Ala. 181; 4 Suth. sec. 149. Where it appears that no injury has resulted, the court will not reverse.—*Carrington v. L. & N. R. R. Co.,* 88 Ala. 475; *Penry v. Dozier,* 161 Ala. 292. On these authorities it must be held that the attempted explanatory charge was properly refused. There is no error in admitting Hanson's evidence.—*Penry v. Dozier, supra.* The court was not in error as to Moore and DeFuniak.—*Lovelace v. Miller,*

150 Ala. 425; *Benton v. Collins,* 47 L. R. A. 42, and authorities cited in the note thereto is conclusive as to the justness of the verdict.

SIMPSON, J.—This action is by the appellant for damages claimed to have been suffered from the publication of a certain article in the Montgomery Advertiser, a newspaper.

The first and second counts of the complaint, including said article and including the agreed statement, at the end of the record, in regard to amendment of complaint, will be set out in the statement of this case by the reporter.

In the court below the general affirmative charge was given in favor of the plaintiff, against the Advertiser Company, and the jury brought in a verdict for one cent.

The first assignment of error insisted on is to the giving of charge 2, at the request of the defendant the Advertiser Company; the insistence being that it was not proper for the jury to consider the mitigating circumstances in this case, because the plaintiff expressly waived all claim for exemplary or punitive damages and claimed only compensatory damages.

Section 13 of our Constitution guarantees to our citizens, for an injury to person or reputation, a remedy by due process of law, and section 3746 of the Code of 1907 provides that: "In all actions of slander and libel, the truth of the words spoken or written, or the circumstances under which they were spoken or written may be given in evidence, under the general issue, in mitigation of damages." Said section merely prescribes a rule of evidence, and does not in the least deny the right of remedy by due process of law. Consequently the statute does not violate said provision of the Constitution.

Mr. Townshend, in his work on Libel and Slander, states that "all the circumstances connected with the publication complained of should go to the jury."— Townshend on Libel & Slander (4th Ed.) § 415, page 683.

In an early case this court said that "the absence of malice, it is true, should be taken into consideration by the jury, in estimating the extent of the injury to the plaintiff's character."—*Shelton v. Simmons,* 12 Ala. 466, 468.

It will be noticed that plea 7 sets up the facts that the defendant, in making said publication, relied upon the sworn statement of E. A. Dickert, in good faith, etc., and no demurrer was interposed to said plea 7, but issue taken thereon. However, the statute is clear to the effect that such evidence is competent in *"all* actions of libel and slander," and we do not see how this court can limit it to only some of said actions.—*Ferdon v. Dickens,* 161 Ala. 181, 193, 49 South. 888.

The state of Washington has a statute similar to ours, and the Supreme Court of that state has held that such evidence should not be rejected, although only actual damages were recoverable in that state (*Ott v. Press Pub. Co.,* 40 Wash. 308, 312, 82 Pac. 404, 405); the court saying: "In the later case of *Levy v. Fleischner, Mayer & Co.,* 12 Wash. 15, 40 Pac. 384, Dunbar, J., after having distinguished punitive from actual damages, in a further discussion of the different classes of actual damages, said: 'We do not mean by the term "actual damages" the actual damages expressed by the statute, of course, such actual damages as could be definitely determined as the actual loss which the debtor would incur by reason of the attachment, and which loss could be determined or computed; but an undetermined loss and damage, which is no less actual by

reason of its indetermined character, such as damages to reputation, damage to pride and feeling, and damages of that character, some of which, it is true, are more or less sentimental. * * *' Our interpretation of the above language is that as distinguished from punitive damages, there may be two classes of actual damages. Appellants separately claimed actual damages for mental pain and suffering and for injury to business. While damages for mental pain and suffering may be, and sometimes are, recognized as actual, as distinguished from punitive, damages, nevertheless they are to a certain extent indefinite, and their value must in all cases be fixed by the jury, in view of all the facts and circumstances surrounding any particular case. In this action appellants were permitted to introduce evidence showing damages of this character, and under said section 4939 [Ballinger's Ann. Codes & St.], supra, evidence of mitigating circumstances was certainly admissible as affecting such actual damages. In any event, the statute expressly provides that such evidence may be admitted, and it would be improper for us, in the face of such statute, to hold that it should be rejected."

Based upon the authorities cited, and the plain wording of the statute, the writer is of the opinion that there was no error in giving charge 2, but the other members of the court hold that the trial court erred in giving said charge.

Charge A, requested by the defendant, had been substantially duplicated, by the giving of charge 24, requested by the defendant.

There was no error in overruling the objections to the questions as to the witness Hanson as to the circumstances under which the publication was received and made, and that the columns of the paper were open to

each candidate on the same terms, to wit, by paying for the articles as advertisements. These were all a part of the circumstances which were proper to go to the jury.—Authorities supra.

In addition, it is shown by the record that substantially the same testimony had been brought out by the plaintiff in his examination of the same witness on interrogatories, and on his redirect examination he testified, without objection, that "the two candidates were treated alike, and each paid for advertisements, and that advertisements of each were accepted on the same terms." So, if there was error in the action of the court in regard to the questions referred to, it was without injury.

The court erred in giving the general charge in regard to the defendant Moore. The circumstances in regard to his being instrumental in getting up the affidavit and having it published in the Birmingham papers, that the affidavit was sent from his office to Montgomery, and that it appeared in the Alvertiser the next morning, were proper to go to the jury in reaching a conclusion as to whether he also furnished it for the purpose of being published in the Advertiser.

As to the giving of the general charge as to De Funiak, the majority of the court, to wit, DOWDELL, C. J., and ANDERSON, McCLELLAN, SAYRE, and SOMERVILLE, JJ., hold that the evidence excluded should have been admitted, and that the general charge should not have been given as to De Funiak. The writer and MAYFIELD, J., hold that the evidence as to what was done in regard to publishing in the Birmingham papers was properly excluded, and that the general charge in favor of De Funiak was properly given.

The judgment of the court is reversed, and the cause remanded.

Reversed and remanded.

[Comer v. The Advertiser Co., et al.]

DOWDELL, C. J., and ANDERSON, MCCLELLAN, SAYRE, and SOMERVILLE, JJ., concur. SIMPSON and MAYFIELD, JJ., dissent in part.

ANDERSON, J.—The complaint, as last amended, disclaims any right to recover exemplary or punitive damages, but sought only actual compensatory damages. Therefore, if the plaintiff was entitled to recover at all, he was entitled to the damage sustained by him, as the result of the publication—no more and no less— and regardless of the circumstances attending the publication. The rule is that, in all cases of libel, the absence of malice, though it may not be a bar to the action, may yet have a material effect in reducing the damages. The plaintiff is still entitled to reasonable compensation for the injury he has suffered; but if the injury was unintentional, or was committed under a sense of duty, or through some honest mistake, clearly no vindictive damages should be given.—Newell on Dem. & Slander, p. 901.

Section 13 of the Constitution of Alabama of 1901 provides that every person, for any injury done him in his person or reputation, shall have a remedy by due process of law. In libel cases there are two classes of damages—general and special. "General damages" (and these are actual) are those which the law presumes must naturally, proximately, and necessarily result from the publication of the libelous matter; they arise by inference of law, and are not required to be proved by evidence; they are allowable whenever the immediate tendency of the words is to impair the plaintiff's reputation, although no actual pecuniary loss results; they are designed to compensate for that large and substantial class of injuries arising from injured feelings, mental suffering and anguish, and personal

humiliation consequent upon the malicious publication of false and libelous matter. Such damages, though not accurately measured by the dollar standard, are actual and substantial; and the effect of the provision, above quoted, in the Bill of Rights, is to protect a citizen in the recovery of such damages from a libelous publication. This proposition was so decided in the case of *Hanson v. Krehbiel,* 68 Kan. 670, 75 Pac. 1041, 64 L. R. A. 790, 104 Am. St. Rep. 422. And the same principles are recognized in *Park v. Detroit Free Press,* 72 Mich. 560, 40 N. W. 731, 1 L. R. A. 599, 16 Am. St. Rep. 544, which has been approved in *McGee v. Baumgartner,* 121 Mich. 287, 80 N. W. 21, where the court said: "The right to recover, in an action of libel for damages to reputation, cannot be abridged by statute." The effect of charge 2 was to say to the jury that they might mitigate the damages which the plaintiff actually suffered, if they found the publication was made by the Advertiser in the honest belief that it was true, without express malice, and for the sole purpose of advising and informing the electors of Alabama as to the fitness and qualifications of plaintiff for office. Such considerations might well have effect upon the recovery of punitive damages, but could and should have no weight in fixing the amount of actual or compensatory damages. The law is thus stated in 25 Cyc. 532: "In all cases where the charge is false and not privileged, plaintiff is entitled to his actual damages, and defendant cannot reduce compensatory damages by proving mitigating circumstances, except such as in their nature bear upon the question of the extent of the injury sustained." In a note to the text, we find the following: "Evidence of plaintiff's intent and motive in publishing the defamatory matter will go in mitigation of the exemplary, but not of the actual, damages sustained.—

*Rearick v. Wilcox,* 81 Ill. 77; *Jones v. Murray,* 167 Mo. 25, 66 S. W. 981; *Callahan v. Ingram,* 122 Mo. 355, 26 S. W. 1020, 43 Am. St. Rep. 583; *Lewis v. Humphries,* 64 Mo. App. 466; *Thompson v. Powning,* 15 Nev. 195; *Buckstaff v. Hicks,* 94 Wis. 34, 68 N. W. 403, 59 Am. St. Rep. 853."

The majority of the court are of the opinion that the trial court erred in giving charge 2, at the request of the defendant Advertiser Company.

Neither do we think that the giving of said charge 2 can be justified because the plaintiff took issue upon defendant's plea 7. Said charge went only to the reduction of damages and the plea was in bar of the action. It sought to answer the complaint and not to merely mitigate the damages.

The case of *Shelton v. Simmons,* 12 Ala. 466, cited by Justice Simpson, does not support his conclusion and is not in conflict with the holding of the majority. The opinion states: "The absence of malice, it is true, should be taken in consideration by the jury, in estimating the extent of the injury to the plaintiff's character." There is a fixed distinction between considering facts, to ascertain the extent of damage sustained, and in considering them for the purpose of reducing and cutting damages sustained. In other words, circumstances attending and prompting the publication should be considered in determining whether or not actual damage was sustained and the extent of same, but not for the purpose of reducing, or mitigating the damage that was actually sustained.

Nor do we think that section 3746 of the Code of 1907 should be so construed as to take away, by a rule of evidence or pleading, a guaranteed right under section 13 of the Constitution. Said section was intended to apply only to cases where such facts could operate to mit-

40—172

igate damages and to obviate the necessity of special pleas.

The majority are also of the opinion that there was evidence of a prima facie conspiracy on the part of Moore and De Funiak, to produce and use the affidavit of Dickert in the pending political campaign and to give it as much publicity as possible, and the fact that they, one or both, caused it to be published in the Birmingham papers, is a circumstance strengthening the theory of such a conspiracy, and which also tends to show that it got to the defendant Advertiser by or through their agency. With this evidence in, neither Moore or De Funiak should have the general charge.

