# Starks *v.* Comer.

## *Libel and Slander.*

(Decided December 17, 1914.  67 South. 440.)

1. *Libel and Slander; Justification; Criticism of Public Men.*—Criticism of public men must be legitimate and reasonable and founded on facts, to escape being defamatory and not to subject to civil liability.

2. *Same; Qualified Privilege.*—The publication of false statements impugning one's fitness for public office will render the publisher

[Starks v. Comer.]

liable for actual damages, as good faith, reasonable diligence in investigating the truth, absence of malice and motives looking to the public good do not create a qualified privilege.

3. *Same; Justification; Truth; Reducing Damage.*—In actions for libel and slander under the express provisions of section 3746, Code 1907, the truth of the publication may be shown under the general issue, but only in mitigation of damages, and a charge that the truth of the publication might be considered only in regard to punitive damages, and that the burden of thus reducing plaintiff's prima facie damage was on the defendant, was proper.

4. *Evidence; Presumptions; Burden of Proof.*—A presumption which establishes an element of a case imposes upon the other party the burden of proof on that point, especially where it supports an allegation of the pleading, such as the falsity of libelous matter.

5. *Libel and Slander; Truth as Issue Under Pleading; General Issue; Burden of Proof.*—A plea of the general issue to an action of libel and slander controverts in fact plaintiff's assertion of the falsity of the statement, and the rule as to the burden of proof being upon the defendant to show truth in mitigation of damages is the same under the general issue as it would be if the truthfulness of the statement was specially pleaded in justification.

6. *Appeal and Error; Objections Below.*—A slight technical inaccuracy in a charge otherwise correct is not reviewable on appeal, if not objected to by the party at the time it was given.

7. *Libel and Slander; Instructions.*—Where libelous matter was undisputably shown to be untrue in at least three material particulars, charges requested by defendant predicated upon the possibility that the jury might find that the publication had been generally true as a whole, were properly refused.

8. *Same; Presumption of Damage; Necessity of Proof.*—Where the action for libel was based upon a charge libelous per se, the law presumes such general damage as mental suffering and injury to and loss of reputation, and these need neither be alleged nor proven specifically.

9. *Same; Pleading; Damage.*—Where specific allegations and proof as to damage are not made and offered, but reliance is had upon the mere publication of the libelous statement, the jury should not be instructed to limit the amount of recovery to nominal damages although they may do so in their discretion.

10. *Same; Compensatory Damages; Measure.*—Where there was nothing to show that plaintiff had not suffered in his feelings and reputation, the question of compensatory damage was still a question for the jury, though it be conceded that he had suffered no pecuniary loss as the result of a libelous publication.

11. *Same; Instructions.*—Where the charge was based upon the assumption entirely unsupported by the evidence, that defendant had endeavored to ascertain the truth or falsity of the publication, such charge was abstract and inapplicable to the specific facts of the case.

12. *Charge of Court; Covered by Those Given.*—Where the charges plainly and fairly covered the matter relied upon for an acquittance, the court will not be put in error for refusing other instructions on the same subject.

13. *Libel and Slander; Pleading; Jury Question.*—Where the amend-ed complaint set up that the defamation was published in a paper not published by the defendant, such an averment was sufficiently supported by evidence that defendant paid for the insertion of the libelous matter in a paper published by others, and hence, the defense was not entitled to have the verdict directed for it on such count.

14. *Evidence; Libel by Affidavit; Character of Affiant.*—Where the defendant published a certain defamatory affidavit, the defendants could not properly introduce evidence as to the affiant's general repu-tation for veracity and reliability, as the relevancy of such evidence depended on defendant's knowledge of affiant's character at the time the affidavit was published, on which point they offered nothing in evidence.

15. *Witnesses; Character Evidence; Character as to Veracity.*— Contradiction of a witness, but not impeachment in a technical sense, by proof that such witness had made a statement out of court differing from his testimony, does not authorize the introduction of character evidence as to his reputation for veracity.

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by Braxton Bragg Comer against B. M. Starks and others for libel and slander. Judgment for plain-tiff, and the defendant Starks appeals. Affirmed.

The substance of the libelous matter and of the com-plaint charging the same may be found in 151 Ala. 613, 44 South. 673, 13 L. R. A. (N. S.) 515, and 172 Ala. 613, 55 South. 195. As a sample of the pleas referred to, plea 3 is as follows: The defendants say that, at the time of the publication of the alleged libelous mat-ter, plaintiff was a candidate for the office of president of the Railroad Commission of Alabama, which was a public office of the state of Alabama, before a primary election of the Democratic party of the state of Ala-bama shortly thereafter to be held, and which was held; that said publication was made by said defendants to the electors of Alabama, and for the purpose of advis-ing the electors of Alabama as to the fitness and qual-ification of plaintiff to fill said office for which he was a candidate at the time of such publication as afore-said; that said defendants, before publishing the alleged

libelous matter, exercised reasonable diligence to ascertain the truth of the facts so published, and at and before the time of said publication believed the facts stated in said publication to be true, and acted in good faith in publishing the alleged libelous matter, and solely for the purpose hereinbefore stated, and in good faith, and without express malice on their part.

TILLMAN, BRADLEY & MORROW, for appellant.

SAMUEL D. WEAKLEY, and FRANK S. WHITE & SONS, for appellee.

SOMERVILLE, J.—The question of primary importance in this case is whether or not the communication made to the public by the defendant Starks, and others confederated with him, through the medium of the two Birmingham daily papers, was, though false, a privileged communication, if made with a bona fide belief in its verity, without actual malice to the plaintiff, and only for the purpose of informing the voters of the state as to his character and fitness for the office of president of the Alabama Railroad Commission; the plaintiff being then a candidate for the party nomination for that office in the forthcoming democratic primaries.

In other branches of this case heretofore appealed to this court (*Comer v. Age-Herald Pub. Co.*, 151 Ala. 613, 44 South. 673, 13 L. R. A. [N. S.] 525; *Comer v. L. & N. R. R. Co.*, 151 Ala. 622, 44 South. 676; *Comer v. Advertiser Co. et al.*, 172 Ala. 613, 55 South. 195), this question does not seem to have been presented; nor does it appear that the general question involved has ever been a subject of decision or discussion by this court.

As shown by the briefs of counsel, the decisions in other jurisdictions are numerous, and diverge in two main conflicting lines, with some intermediate shadings of opinion.

We have examined these decisions, and have considered the question, with much care and with a due solicitude for the adoption by this court of the rule which most nearly reflects the spirit of reason, justice, and sound policy; and we conclude that the libelous publication here shown was not one of qualified privilege, and that liability for actual damage by reason of its falsity cannot be defeated by such a plea.

Some of the leading authorities which support this view, with a citation and discussion of the other cases, are the following: *Com. v. Clap*, 4 Mass. 163, 3 Am. Dec. 212; *Burt v. Newspaper Co.*, 154 Mass. 238, 28 N. E. 1, 13 L. R. A. 97; *Banner Pub. Co. v. State*, 16 Lea (Tenn.) 176, 57 Am. Rep. 216; *McAllister v. Detroit Free Press Co.*, 76 Mich. 338, 43 N. W. 431, 15 Am. St. Rep. 318, and note, 353-357; *Smith v. Burrus*, 106 Mo. 94, 16 S. W. 881, 13 L. R. A. 59, 27 Am. St. Rep. 329; *Upton v. Hume*, 24 Or. 431, 33 Pac. 810, 21 L. R. A. 493, 41 Am. St. Rep. 863; *Jones v. Townsend*, 21 Fla. 431, 58 Am. Rep. 676; *Hamilton v. Eno*, 81 N. Y. 116; *Star Pub. Co. v. Donahoe*, (Del.) 58 Atl. 513, 65 L. R. A. 980; *Coffin v. Brown*, 94 Md. 190, 50 Atl. 567, 55 L. R. A. 732, 89 Am. St. Rep. 422; *Dauphiny v. Buhne*, 153 Cal. 757, 96 Pac. 880, 126 Am. St. Rep. 136, citing *Jarman v. Rea*, 137 Cal. 339, 70 Pac. 216; *Post Pub. Co. v. Hallam*, 59 Fed. 530, 8 C. C. A. 201 (opinion by Judge Taft). In line, also, may be noted the leading English case of *Davis v. Shepstone*, 55 L. T. Rep. (N. S.) 1, 11 App. Cas. 187, 190.

Judge Freeman, after a very full consideration of the conflicting authorities, reached the conclusion that:

"The better opinion, and the one sustained by the preponderance of the authorities, both English and American, is that false or defamatory publications concerning the acts or character of a candidate are not privileged, and are actionable." Note, 15 Am. St. Rep. 355.

In his article on Libel and Slander in 25 Cyc. 404, Prof. Kinkead summarizes the law as follows: "When a man becomes a candidate for office, his character for honesty and integrity and his qualifications and fitness for the position are put before the public and are thereby made proper subjects for comment. But as a general rule false allegations of fact charging criminal or disgraceful conduct, or otherwise aspersive of character, are not privilege."

To the same effect is the text of 18 A. & E. Ency. Law, 1042.

It is, of course, to be conceded that the decisions on the other side are respectable both as to their number and authority. Perhaps the leading ones are *Briggs v. Garrett*, 111 Pa. 404, 2 Atl. 513, 56 Am. Rep. 274; *Morse v. Times Co.*, 124 Iowa, 707, 100 N. W. 867; *Coleman v. MacLennan*, 78 Kan. 711 98 Pac. 281, 20 L. R. A. (N. S.) 361, 130 Am. St. Rep. 390; *Express Print-Co. v. Copeland*, 64 Tex. 354. And alone among commentators, Judge Cooley seems to favor the minority view.—Cooley on Const. Lim. (7th Ed.) 644. See, also, 22 Harvard Law Rev. 446.

The authorities above cited have presented the reasons leading to their conclusions so fully that nothing of value can now be added. We venture the suggestion, however, that the public interest and welfare, upon a consideration of which alone the minority view seems to be grounded, are quite as likely to be injured and defeated by the public calumniation of worthy candidates for public office—usually impossible of seasonable

[Starks ·v. Comer.]

refutation other than by mere denial, and often not even by that—as they are likely to be conserved by the public exposure of the unfitness of those who are unworthy. Indeed, it may perhaps be asserted, as a matter of common experience, that the great majority of the detractory charges which are made or published against candidates during political campaigns are without substantial foundation in fact; and, also, that they are made for personal or partisan purposes, rather than for the enlightenment of the electorate and the purification of their verdict at the polls.

(1) Hence, not only as a matter of private justice, but on considerations of sound public policy as well, the disseminators of such calumnies ought not·to be immune against civil responsibility merely because they believe them to be true, and themselves use them in good faith for the edification of the public. It is, of course, not to be understood that this view in any way denies the privilege of fair criticism of and comment upon the character, conduct, or fitness of candidates for public office. But such criticism and comment must be founded on facts, and not on falsehoods, and must be legitimate and reasonable, as pointed out in the case of *Parsons v. Age-Herald Co.*, 181 Ala. 439, 61 South. 345, 350.

(2) It results from the principles above approved that the defendant's special pleas of qualified privilege were subject to the demurrers assigned, and the demurrers were properly sustained.

(3) Under the plea of the general issue, our statute allows the defendant to give in evidence the truth of the words spoken or written, or the circumstances under which they were spoken or written only "in mitigation of damages," and not in bar of the action.—Code, § 3746; *Ferdon v. Dickens,* 161 Ala. 181, 49 South. 888. But, in such case, a requested charge, which submits

to the jury the question of truth or falsity, ought also to limit that issue to the mitigation of damages, since otherwise it might very well mislead the jury as to the effect of their finding. Under such a plea, the defendant in this case introduced evidence tending to prove the truth of the alleged libel. At plaintiff's request, the trial judge instructed the jury that: They could "consider the question of the truth of the publication only as bearing upon the question of punitive damages, and in that aspect of the case the burden of proof to show the truth of the charge would rest upon the defendants and not upon the plaintiff."

It is insisted for the defendant that the truth of the charge has a logical bearing upon the amount of the actual damage, in that the mental suffering arising from the publication of a charge which is true in fact may not be so great as it would be if the charge were false in fact. Logically, and in spite of the popular adage, "It's the truth that hurts," appellant's proposition is sound enough. Yet, under the peculiar rules which govern the pleading and proof in actions for defamation, we can find no warrant for the consideration of the truth of the publication for the purpose claimed. In the absence of a plea of justification, it is, by the express limitation of the enabling statute, to be considered only in mitigation of damages, and hence it cannot become a factor in the ascertainment of actual damage. This is to say in effect, as affirmed by plaintiff's eleventh given charge, that, so far as actual damages are concerned, the falsity of the publication is in this case, under the pleadings, to be conclusively presumed.

( 4, 5) A legal presumption which establishes an element of a plaintiff's case, or of a defendant's defense, in his respective favor, in effect imposes upon the other

party the burden of proof with respect thereto. This is especially true where a legal presumption supports an allegation of pleading. In the present case the law presumes that the publication was false, and that presumption continues until it is overcome by evidence showing its truth. Hence the charge to the jury that the burden of proof was upon the defendant to show the truth of the publication in mitigation of damages was practically correct, if not scientifically accurate. In *Hereford v. Combs*, 126 Ala. 369, 378, 28 South. 585, it is said that: "Notwithstanding the truth of the words spoken may be given in evidence under the general issue by the defendant, the burden of proof is upon him to reasonably satisfy the jury of their truth."

This may be but a dictum, since in that case there was a plea of justification. But the plea of the general issue in fact denies the falsity of the publication as fully as does a special plea of justification, although its effect is limited, and there can be no logical reason for a different rule as to the burden of proof under the two pleas in this respect.

(6) We are not inadvertent to the distinction noted by law writers and judges between the burden of proof, which, strictly speaking, never shifts from the affirmative to the negative, and the "duty of going forward with the evidence," which frequently shifts as a result of prima facie proof or legal presumptions.—5 A. & E. Ency. Law, 40. We only mean to say, in this behalf, that the failure of the trial court to observe this nice distinction in phraseology in dealing with this subject was at least not reversible error. An explanatory charge should have been requested by the defendant if he apprehended a prejudicial misunderstanding of this charge by the jury.

(7) Several charges were requested by the defendant upon the predicate of a finding by the jury that the publication was true. The undisputed evidence is that is was untrue in at least three material particulars, viz.: (1) That the affiant Dickert asserted as a fact that he was a cousin of the plaintiff, B. B. Comer; (2) that Comer invited Dickert into Comer's private office; and (3) that Dickert swore to the truth of the alleged affidavit. The charges referred to were therefore abstract in so far as they were predicated upon the truth of the charge as a whole, and their refusal in the form requested cannot be held erroneous. The predicate should have been the truth of any material part or parts of the publication.

(8) The communication being libelous per se (*Comer v. L. & N. R. R. Co.*, 151 Ala. 622, 44 South. 676), the law presumes such general damage to the plaintiff as mental suffering and injury to his reputation, and it necessarily follows that these elements of damage need not be allleged in the complaint not supported by proof. *Garrison v. Sun, etc., Ass'n*, Ann. Cas. 1914C, 291, 295, note; *Chesley v. Thompson*, 137 Mass. 136. A different rule has been adopted in this state in actions in Code form for assault and battery (*S. S. S. & I. v. Dickinson*, 167 Ala. 211, 52 South. 594); but we cannot extend that rule to actions for libel or slander, although there was formerly some dissension of opinion on the subject, as shown by the opinions filed in *Advertiser Co. v. Jones*, 169 Ala. 211, 670, 53 South. 759.

(9) The award of damages in this behalf is for actual damage, and not for punishment merely.—*Comer v. Advertiser Co.*, 172 Ala. 613, 623, 55 South. 195. And while the jury might in their discretion limit the amount of their award, even down to nominal dam-

ages (*Advertiser Co. v. Jones,* 169 Ala. 196, 53 South. 759), they cannot be instructed to do so.

(10) Conceding that the evidence in this case shows, without dispute that the plaintiff has suffered no pecuniary loss, and no injury to his reputation, there is nothing to show that the publication did not wound his sensibilities and inflict upon him substantial mental suffering. The matter of substantial compensatory damages therefore remained a question for the jury.

(11) Defendant's refused charge 29 is substantially covered by his given charge 11, except that 29 includes, among the facts to be considered in awarding punitive damages, if any should be given, the hypothesized fact that defendant used reasonable diligence to ascertain the truth or falsity of the publication. We discover nothing in the evidence that in any way suggests that the defendant Starks exercised any diligence or did anything at all looking to such an ascertainment, and hence the charge must be pronounced abstract in that respect—for which reason it was properly refused.

(12) Defendant's refused charge 41 is faulty in form, as applied to the evidence, in that it practically leaves to the jury the interpretation of the complaint with respect to the scope of the word "published" as used therein. Defendant's given charge 10 stated clearly and fairly that defendant was not liable at all unless he published, or aided or abetted in the publication of, the article complained of, and covered in proper form the matter relied upon for an acquittance in the refused charge.

(13) The amended second count of the complaint charges defendant's publication of the libel in the Birmingham Ledger, "a newspaper not being then published by defendants or any of them, but by the Ledger Publishing Company." It is urged that, in view of this aver-

ment and the failure of any support for it in the evidence, the defendant was entitled to an affirmative instruction in his favor on this count.

We do not regard the averment as being in any way material to the plaintiff's case. However, the proof does show that the Ledger was published by the Ledger Publishing Company, of which J. J. Smith was president; that defendant and his alleged confederates were officials engaged in the employment of the Louisville & Nashville Railroad Company; and that they arranged by contract and for a pecuniary consideration for the publication of the article in the paper. We think that upon these facts it was at least open to the jury to infer that the defendants were not separately or severally the publishers of the Birmingham Ledger. This charge was therefore properly refused.

We find no reversible error with respect to any charges refused to the defendant, and the oral charge of the court and the charges given for the plaintiff are in harmony with the principles stated herein.

It remains only to consider the action of the trial court in refusing to allow the defendant to introduce evidence to show that Dickert's general character and reputation, and also his reputation for truth and honesty, was good before and at the time he signed the affidavit.

The character and standing of one's informant is always relevant to the inquiry whether or not the information received from him was credible, and whether or not it was in fact accepted in good faith as being true. And this is equally true whether the recipient personally knows his informer's character, or whether he knows it only by its reputation in the community.

(14) It is contended by the plaintiff that evidence of Dickert's good character or reputation was not com-

[Starks v. Comer.]

petent in this connection until it was first assailed by
the plaintiff; and reference is made, by way of analo-
gy, to the familiar rule that the general character of
a witness cannot be thus supported until assailed by
the opposite party. We think, however, that in a case
like this, where the direct issue itself is the credibility
of the informer and the recipient's bona fide accept-
ance of the information as true, the defendant ought to
be allowed to take the initiative and prove the issue by
showing the character or reputation of his informer.
Certainly such evidence is relevant, and is not forbid-
den by considerations either of policy or convenience.
We find only one case in which the question has been
treated, and there it was held, not only that the defend-
ant in libel may, but also that he must, show the source
of his information, and that his informant was "pos-
sessed of such character and standing as would com-
mand a belief in the truth of his utterances."—*Edwards
v. San Jose Society,* 99 Cal. 431, 439,34 Pac. 128, 130
(37 Am. St. Rep. 70, 76).

Without going so far as the California court, we hold
that such evidence is competent and admissible.

It is obvious, however, that its value as indicative
of the belief of the defendant depends absolutely upon
his contemporaneous knowledge of his informant's good
character or reputation; and unless such knowledge is
made to appear, in connection with the offer of such
evidence, the evidence is prima facie irrelevant and can-
not be received. The evidence in this case offers no hint
that the defendant knew of or relied upon the char-
acter or reputation of Dickert when he made publica-
tion of Dickert's alleged affidavit, and, for this reason,
we think there was no error in its rejection.

It is suggested by the defendant that, independent-
ly of this ground of admissibility, this character evi-

dence was admissible in corroboration of Dickert's testimony because he had been impeached by evidence of contradictory statements made on other occasions out of court.

(15) It is true that such corroboration is authorized whenever, upon proper predicate laid, by calling the witness' attention thereto, other witnesses have testified to particular statements as having been made by the witness, and which are presently denied or not admitted by him. But the record in this case does not show such an impeachment, but only a contradiction of Dickert's testimony by other witnesses. This does not authorize the introduction of evidence of his good character.—*Baucum v. George,* 65 Ala. 259.

Finding no reversible error in the record, the judgment will be affirmed.

Affirmed.

ANDERSON, C. J., and DE GRAFFENRIED and GARDNER, JJ., concur.

#### ON REHEARING.

SOMERVILLE, J.—We have reviewed the several questions discussed in the foregoing opinion, and the full bench now concurs in the conclusions reached on the original hearing.

In the case of *Comer v. Advertiser Co.,* 172 Ala. 613, 625, 55 South. 195, 199, in distinguishing the case of *Shelton v. Simmons,* 12 Ala. 466, it was said, per Anderson, J.: "There is a fixed distinction between considering facts, to ascertain the extent of damage sustained, and in considering them for the purpose of reducing and cutting damages sustained. In other words, circumstances attending and prompting the publication

should be considered in determining whether or not actual damage was sustained and the extent of same, but not for the purpose of reducing, or mitigating the damage that was actually sustained."

. It is insisted that this language is in conflict with our present holding that the truth of the publication can be shown under the general issue only for the purpose of mitigating punitive damages. We do not think that there is any conflict in these cases, for the obvious reason that the truth of the publication was not under consideration in *Comer v. Advertiser Co.,* or in *Shelton v. Simmons,* and the limitation of the use of the truth of the publication to the mitigation of punitive damages—there being no plea of justification—is founded upon a rule of pleading which is the outgrowth of public policy, and not upon the logical irrelevancy of the truth of the publication to the question of actual damage.

Speaking for himself alone, the writer is of the opinion that the case of *Shelton v. Simmons, supra,* (wherein it was said that the "absence of malice   *   *   * should be taken in consideration by the jury, in estimating the extent of the injury to the plaintiff's character"), is, as to that statement, utterly opposed to reason, and at variance with all authority, and should be overruled when the occasion arises. It is not necessary to do so now.

With respect to the burden of proof as to the truth of the publication, we can conceive of no reason, and we know of no authority, for holding that the presumption of its falsity arises only upon a plea of justification. We think it arises, and must be overcome by the defendant, in all cases, whatever be the nature of the defense.

It is insisted that our present ruling that actual damage, as presumed by law, may be recovered for under the Code form of complaint, without being specially claimed therein, is in conflict with the decision of this court in *Advertiser Co. v. Jones,,* 169 Ala. 169, 211, 53 South. 759. Counsel is in error as to this. It clearly appears that only five justices sat in that case, and that three of these upon rehearing did not concur in the conclusion upon this question as stated in the original opinion. Counsel has doubtless overlooked the fact that neither Justice SIMPSON, nor Justice SAYRE, participated in that decision.

The application will be overruled. All the Justices concur.